PARISH & BINGHAM CORPORATION et al.
v. UNITED STATES.

No. J–445.

Court of Claims.

Nov. 3, 1930.

Henry M. Ward and Harry A. Fellows, both of Washington, D. C. (Thos. P. Littlepage, of Washington, D. C., and J. C. Little, on the brief), for plaintiffs.

Charles R. Pollard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Chas. F. Kincheloe and J. S. Franklin, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, GREEN, and LITTLETON, Judges.

LITTLETON, Judge.

Plaintiffs claim interest of $10,186.04 on the overpayment of $51,635.60 for 1918 cred-

ited against an additional assessment made March 19, 1923, for 1917 from the date of the overpayment, December 17, 1919, to the date of the additional assessment, a period of three years three months and two days. They also claim interest upon this amount at 6 per cent. from March 19, 1923, to the date specified in section 615 (a) of the Revenue Act of 1928 (28 USCA § 284). The claim for interest is based on section 1019 of the Revenue Act of 1924 (26 USCA § 153 note).

Parish & Bingham Company, prior to its dissolution on June 10, 1926, executed a closing agreement authorized by section 1106 (b) of the Revenue Act of 1926 (26 USCA § 1249 note), and on June 7, 1926, forwarded the same to the Commissioner of Internal Revenue, together with a certified copy of the resolution of the board of directors authorizing the execution of the agreement, as instructed by the Commissioner in his letter to the corporation of May 20, 1926. The closing agreement was signed by the Commissioner on June 21 and was approved by the Secretary of the Treasury on June 29, 1926. On October 8, 1926, the Commissioner informed the corporation that the agreement closed the case and that it could not be reopened.

With respect to the closing agreement, it is insisted on behalf of plaintiffs, first, that the settlement agreement is void because it was signed by the Commissioner and approved by the Secretary of the Treasury after the corporation had been dissolved; secondly, that, if the agreement is valid, it does not affect plaintiffs' right to recover interest because it relates only to the tax, and the right to interest exists independently of the tax. It is insisted that section 1106 (b) does not authorize either the liability of the taxpayer to pay interest or his right to recover interest, as the case may be, to be conclusively settled by agreement; that all that is to be settled is the "determination and assessment" of the principal amount of the tax; that, when an agreement has been made, the Commissioner is deprived of power to make any further assessment and to determine any overassessment but the taxpayer is not precluded from suing to recover an item not covered by or within the scope of the agreement.

The defendant takes the position that the closing agreement is valid; that the matter of interest was included within it, and that by the statute plaintiffs are precluded from maintaining this suit; that, irrespective of the settlement agreement, the plaintiffs are not entitled to recover interest on the overpayment for a period of time during which plaintiff corporation owed the United States an equal amount of tax upon which it is insisted the government had a right to demand interest.

■ We are of opinion, first, that the closing agreement is valid; and, secondly, that the matter of the allowance of interest on the credit was a part of the Commissioner's determination for 1917 and 1918 within the meaning of the term "determination" used in section 1106 (b) of the statute which was made final and conclusive by the agreement, and that, under the statute, plaintiffs are precluded from maintaining this suit.

Article 2, section 35, of the General Corporation Law of New York as amended by Laws 1927, c. 423, provides as follows:

"*Directors as Trustees in Case of Dissolution.* Upon the dissolution of any corporation, its directors, unless other persons shall be designated by law, or by a court of competent jurisdiction, shall be the trustees for its creditors, stockholders or members, and shall have full power to settle its affairs, collect and pay its outstanding debts, and distribute to the persons entitled thereto the assets remaining after payment of debts and necessary expenses.

"Such trustees shall have power in the corporate name to transfer and convey its property, and may sue and be sued in such name. They shall jointly and severally be accountable to its creditors, stockholders or members, for the property which shall come into their possession."

Article 10, section 105, paragraph 8, of the Stock Corporation Law of New York (Consol. Laws N. Y. c. 59), provides that "such corporation shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and doing all other acts required to adjust and wind up its business and affairs, and may sue and be sued in its corporate name." Under the last-mentioned section the corporation continued and is still in existence for the purpose of paying, satisfying, and discharging its liabilities or obligations, collecting its assets, and doing all other acts required in adjusting and winding up its affairs, and for the purpose of suing and being sued in its corporate name. The execution of the agreement in question was to satisfy and discharge any existing liability of the corporation and was an act incident to adjusting and winding up the business affairs of the corporation.

The authority of the corporation with re-

spect to the agreement did not end upon dissolution on June 10, and the dissolution did not invalidate the execution of the agreement by the corporation. Furthermore, the president of the corporation who signed the agreement on behalf of the corporation and who was himself a director, and the other directors of the corporation, who by resolution had authorized the execution of the agreement, were trustees in dissolution of the corporation and had full knowledge of what had been done. They took no steps to notify the Commissioner of the dissolution or to recall the agreement. As trustees, they had authority under the statute to execute such an agreement. Their silence in objecting to the signing of the agreement by the Commissioner, and the approval thereof by the Secretary, precludes them from now attacking its validity. The Corporation Law of New York continued the corporation and gave its directors broad authority, as trustees, finally to wind up and settle the affairs of the corporation. The very purpose of this agreement was to accomplish that result, and authority to execute it was clearly within the terms of the statute. Moreover, it appears that on October 8, 1926, which was a reasonable time after the execution of the agreement by the Commissioner, he notified the corporation that the agreement had been executed; that it closed the case and it could not be reopened.

We are of opinion that the matter of interest was included within the terms of the agreement. The term "determination," used in section 1106 (b) of the Revenue Act of 1926 (26 USCA § 1249 note) comprehends everything concerning which the Commissioner is required to make a determination in fixing the amount of the liability of the taxpayer to the government for the tax, penalty, interest, additional amount or additions to the tax, or the liability of the government to the taxpayer for the refund or abatement of a tax, penalty, additional amount or additions to the tax, and the allowance and payment of interest. The plain purpose of section 1106 (b) was finally to settle all questions relating to the liability of the taxpayer or the government in respect of the period covered by the agreement and to prevent the reopening of any question entering into the Commissioner's determination for such period except on the ground of fraud, malfeasance, or material misrepresentation of fact affecting such de-

termination. None of these exceptions exists in this case. The Commissioner is charged by law with the duty of allowing and paying interest upon a credit, and this was a part of his determination which section 1106 (b) includes, and which was finally settled by the closing agreement, and prior to the execution thereof he had made such a determination.

When a closing agreement is entered into between the taxpayer and the Commissioner under section 1106 (b), it must, of necessity, embrace every element of the Commissioner's determination; otherwise it is not an agreement under that section, and, when so entered into, it is final and conclusive as to all questions with respect to which the Commissioner has made a determination or as to which he is by law required to make a determination. The parties have no authority under the statute to limit the agreement to any particular feature of the determination made. To hold otherwise would so restrict the meaning of the language of the section as to make it of little effect, and would defeat the purpose which the section plainly sought to accomplish. The provisions of the statute that, if a "taxpayer has paid in whole any tax or penalty, or accepted any abatement, credit, or refund based on such determination," and an agreement is entered into, must be interpreted, not as a limitation on that which is to be included in the determination, that is to be made final and conclusive, but rather as a specification of that which the taxpayer must do to become entitled to make the closing agreement.

The closing agreement precludes recovery, and the court is without authority to annul or modify it. Cf. Bankers' Reserve Life Co. v. United States, 42 F.(2d) 313, and Wisconsin National Life Insurance Co. v. United States, 42 F.(2d) 316, decided by this court June 16, 1930.

Even if plaintiffs were entitled to maintain this suit, there are other reasons why they are not entitled to recover the entire amount claimed, but it is unnecessary to discuss these matters.

The petition must be dismissed, and it is so ordered.

WHALEY, Judge, did not hear this case, and took no part in the decision thereof.