SAUL ZAENTZ AND LYNDA ZAENTZ, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3273-86.          Filed April 21, 1988.

*Randall G. Dick* and *Jeffrey I. Margolis*, for the petitioners.

*Eugene H. Ciranni* and *Margaret S. Rigg*, for the respondent.

OPINION

NIMS, *Judge*: This matter is before the Court on petitioners' motion for partial summary judgment pursuant to Rule 121.[1] The requirements of Rule 121 have been satisfied,

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect during the years in issue.

and we find that a partial summary judgment is appropriate in this case. The issue raised by petitioners' motion is whether statutory closing agreements that settled earlier controversies between petitioners and respondent involving matters other than those in dispute in this case bar respondent from arguing now that certain entities are shams and certain trusts are grantor trusts.

Summary judgment is appropriate when there is a showing that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b). Respondent maintains that summary judgment is not appropriate in this case because there are genuine issues as to whether the entities in question are sham and whether the trusts in question are grantor trusts. Respondent also disagrees with petitioners' interpretation of the closing agreements. Respondent has failed to understand the nature of the issue in this case. Petitioners' motion does not ask us to find as a matter of fact that the entities in question are not sham entities or that the trusts in question are grantor trusts. The issue is whether the closing agreements preclude respondent from making arguments in this case concerning the character of the entities in question. Because there is no genuine issue of material fact necessary for determining the preclusive effect of the closing agreements, summary judgment is appropriate in this case, and a decision can be rendered as a matter of law.

## Background

Petitioners' and respondent's statements of the facts are sufficiently similar to preclude a finding that there is a genuine issue of material fact with regard to this motion for partial summary judgment. Solely for purposes of this motion, we rely upon the pleadings, affidavits, exhibits attached to the affidavits, and other acceptable materials offered by the parties. None of the parties have objected to the material facts set forth in any of the memoranda, the pleadings, the affidavits, or the documents offered in support of the positions taken herein.

Petitioners were residents of California at the time the petition in this case was filed. Respondent determined deficiencies in petitioners' income tax for the taxable years

1976 through 1982 on the basis of several theories. In his statutory notices of deficiency, respondent included the following explanation of adjustments:

a. *Motion Picture and Related Income*

(1) It is determined that the corporations Skylark Filmmaatschappij, B.V. ("Skylark") and N.V. Zwaluw ("Zwaluw"), the partnership, Argosy Venture ("Argosy"), and trusts, the trustees of which were at various times Castle Trust Company Limited (or its successors) and Canadian Imperial Bank of Commerce Trust Company (Bahamas) Limited, are shams, and that you are the true earner of the income from the motion picture, "One Flew Over the Cuckoo's Nest", and of the interest income from loans by those companies, partnerships, and trusts. To the extent any of the income was earned by the foregoing trusts you are taxable on the trust's [sic] income pursuant to sections 671-679 of the Code.

Petitioners maintain that certain closing agreements between respondent and petitioners entered into during prior tax controversies bar respondent from asserting that Argosy Venture and its constituent trust partners are sham entities and that the trusts in question were grantor trusts under sections 671 through 679. A review of the prior tax controversies is necessary for an understanding of the issue in this case.

In the late 1960s, petitioner Saul Zaentz (hereinafter referred to as petitioner) was associated with Fantasy Records Co., a U.S. partnership that manufactured and distributed phonograph records and tapes. The partnership's profits increased in 1968 as a result of a recording contract with Creedence Clearwater Revival, and in June 1968, the partnership was incorporated into Fantasy/Galaxy Record Co., Inc. (hereinafter referred to as Fantasy, Inc.).

On or about July 1, 1969, petitioner transferred his shares in Fantasy, Inc., to Jeffrey Investment Co., a Delaware corporation. In December 1969, Ted Ponseti, Albert Bendich, and Frank Noonan transferred their shares in Fantasy, Inc., to separate Delaware corporations, Rosewell Commercial, Inc., Van Arvey, Inc., and Fernway Commercial, Inc., respectively. Each of the foregoing transfers was made in exchange for shares of preferred stock of the Delaware corporation to which the Fantasy, Inc., shares were transferred.

On June 30, 1970, Argosy Venture (hereinafter referred to as Argosy), a purported Bahamian partnership, purchased all of the outstanding stock of Fantasy, Inc., that was held by individuals. Argosy also purchased for $3.57 million all of the preferred stock of the four Delaware corporations that held stock of Fantasy, Inc. On or about June 30, 1970, Argosy liquidated the four corporations into itself thereby obtaining possession of the corporate assets including the Fantasy, Inc., shares and the corporate books and records.

The partners in Argosy are five Bahamian trusts, the trustee of which was, in 1970, Castle Trust Co., Ltd. Trust T-6000, which held a 75-percent interest in Argosy, was created for the benefit of Celia Zaentz, but in 1970, the descendents of petitioner became the beneficiaries.

On or about June 29, 1970, the principal shareholders of Fantasy, Inc., petitioner, and certain other individuals formed a limited partnership, Fantasy/Galaxy Record Co. (hereinafter referred to as FGRC), to manufacture and distribute phonograph records and tapes. Seven of the shareholders of Fantasy, Inc., and one new partner of FGRC established a total of 102 family trusts which became limited partners in FGRC.

Petitioner established 14 of these family trusts. The 14 family trusts established by petitioner hereinafter will be referred to as the Joshua domestic trusts. The Joshua domestic trusts were created on June 26, 1970, and were executed by petitioner as grantor and Burton Kanter as trustee.

By an "Exercise of Power" dated February 3, 1972, each of the Joshua domestic trusts, except one, was divided into two separate trusts. In the FGRC Royalty Closing Agreement, petitioners and respondent agreed that the documents entitled "Exercise of Power" were void.

On June 30, 1970, Argosy entered into an agreement under which the domestic (United States and Canadian) rights to the Fantasy Galaxy record catalog were licensed to a Netherlands Antilles company known as Gesternte N.V. (hereinafter Gesternte). Gesternte then sublicensed the domestic rights to the record catalog to FGRC under an agreement that gave Gesternte royalties of up to 50 percent.

On May 30, 1971, Prestige Records, Inc., sold all of its assets to Regency (Cayman Islands). Regency licensed its catalog to Basalt Finance Co. N.V. (hereinafter Basalt), a Netherlands Antilles company. Basalt sublicensed the Prestige catalog to FGRC under a sublicensing agreement that was substantially similar to the sublicensing agreement between Gesternte and FGRC.

In deficiency notices for the taxable years 1970 through 1973, respondent determined that petitioner was taxable on the income to FGRC and that the deductions for royalties paid by FGRC to Gesternte and Basalt were excessive. Included with the deficiency notices for the taxable years 1970 through 1973 was the following explanation:

It is held that royalties which are claimed to have been paid to Gesternte, N.V., and to Basalt Finance Company, N.V., two entities which you own or control * * * are not allowable in the amounts shown below. The deduction claimed for royalties paid to these entities is not allowable to the extent shown because: (1) it is held that these amounts do not represent ordinary and necessary business expense; (2) your income and the income of the related entities would not be clearly reflected if these amounts were to be allowed; therefore adjustment is made in accordance with the provisions of section 482 of the Internal Revenue Code; and (3) you have failed to establish that the transactions giving rise to the increased royalties should be recognized as bona fide for tax purposes.

In response to the deficiency notices, petitioners filed a petition in this Court. The litigation resulted in the entry of decision documents in this Court and in the FGRC royalty closing agreement. In the FGRC royalty closing agreement, petitioners and respondent agreed that:

a. From June 29, 1970 through December 31, 1974 the interest in and the share of the profits and burden of the losses of each of the above stated partners in Fantasy/Galaxy Record Company was as follows:

| Partner | Interest |
| --- | --- |
| Saul Zaentz | 12.30% |
| Dorian Trust | .18 |
| Joshua Trust | .18 |
| Athena Trust | .18 |
| Jonathan Z. Trust | .18 |
| Esther Trust | .18 |
| Stacy Z. Trust | .18 |
| Valerie Trust | .18 |
| Alan Z. Trust | .18 |
| Claudia Trust | .18 |

| Partner | Interest |
|---|---|
| Dermer Trust | .18 |
| Panovich Trust | .18 |
| Marilyn Trust | .18 |
| Annie Trust | .18 |
| Nancy Trust | .18 |
| Judy Trust | .18 |

b. From January 1, 1975 through December 31, 1975 the interest in and the shares of the profits and burdens of the losses of each of the above partners in Fantasy/Galaxy Record Company was as follows:

| Partner | Interest |
|---|---|
| Saul Zaentz | 12.46453% |
| Dorian Trust | .18241 |
| Joshua Trust | .18241 |
| Athena Trust | .18241 |
| Jonathan Z. Trust | .18241 |
| Esther Trust | .18241 |
| Stacy Z. Trust | .18241 |
| Valerie Trust | .18241 |
| Alan Z. Trust | .18241 |
| Claudia Trust | .18241 |
| Dermer Trust | .18241 |
| Panovich Trust | .18241 |
| Marilyn Trust | .18241 |
| Annie Trust | .18241 |
| Nancy Trust | .18241 |
| Judy Trust | .18241 |

c. The interest in and the share of the profits and the burden of losses of each of the above partners of Fantasy/Galaxy Record Company in that partnership will subsequent to December 31, 1975 remain as set forth in paragraph "b" above for so long as that partnership remains in existence, unless any of such interests or shares of profits and burdens of losses, or any part thereof, are transferred by the owner thereof or additional such interests or shares and burdens are transferred to such partners.

d. Each of the aforesaid documents entitled "Exercise of Power" have at all times been void and without effect; consequently the trusts designated by those documents as the

> Feather Trust;
> Clipper Trust;
> Strawberry Trust;
> Bucks Trust;
> Plumas Trust;
> Eureka Trust;
> Mohawk Trust;
> Yuba Trust;
> Donner Trust;
> Truckee Trust;
> Tahoe Trust;

Echo Trust;
Sonora Trust; and
Calaveras Trust

have never existed and the $4,340.00 which each of those documents purported to allocate to each of those trusts have at all times been a part of the assets of the trust from which each of the above stated trusts was purported to have been created. Consequently, none of the trust parties hereto is entitled to a distribution deduction for that amount purportedly allocated.

e. The "additional liability" of the taxpayer parties to this agreement shall be ignored for purposes of computation of any carryover or carryback of any deduction or credit under any provision of the Internal Revenue Code of 1954.

f. For all years beginning after 1974 payments and accruals of moneys by Fantasy/Galaxy Record Company as licensing royalties to Gesternte N.V. and/or Basalt Finance Company N.V. based upon the agreements concerning such royalties set forth above, or extensions and/or renewals of those agreements, shall be allowed as ordinary and necessary business expenses in determining the income of that partnership so long as there is no increase in licensing rates as provided in those agreements and no relevant changes in the Internal Revenue Code subsequent to September 10, 1981.

In 1984, respondent assessed petitioner for excise tax under section 1491 on his sale in 1970 Fantasy, Inc., stock to Argosy through his corporation Jeffrey Investment Co. In settlement of the controversy regarding the section 1491 tax, Argosy agreed to pay the liability. Accordingly, respondent entered into two closing agreements, one with petitioner and one with Argosy.

In the closing agreement between petitioner and respondent, the parties agreed:

(1) Taxpayer has no Code section 1491 tax liability with respect to any of the transactions hereinabove described.

(2) The payment of the Additional Liability shall not be deemed to be a distribution and/or an event taxable to the Taxpayer.

In the closing agreement between Argosy and respondent, the parties agreed:

(1) Other than as provided for in this agreement, the Taxpayer shall not be liable, either directly or as transferee, for any Code section 1491 tax arising out of its acquisition of the common stock of Fantasy and the common and preferred stock of Fernway, Jeffrey, Van Arvey and Rosewell, or any of the other transactions hereinabove described; and

(2) The Additional Liability paid by the Taxpayer shall not be deemed to be a distribution and/or an event taxable to any of the former stockholders of Fantasy or their spouses.

## Discussion

Petitioners maintain that the three closing agreements bar respondent from arguing in this case that Argosy and its constituent trust partners are shams for Federal income tax purposes or, in the alternative, that the Argosy trusts are grantor trusts under sections 671 through 679. We disagree.

Section 7121(a)[2] authorizes respondent to enter into agreements in writing with any person relating to the liability of that person in respect to any internal revenue tax for any taxable period. Closing agreements are binding on the parties as to the matters agreed upon and may not be annulled, modified, set aside, or disregarded in any suit or proceeding unless there is a showing of fraud, malfeasance, or misrepresentation of a material fact. Sec. 7121(b); *Wolverine Petroleum Corp. v. Commissioner*, 75 F.2d 593 (8th Cir. 1935), affg. 29 B.T.A. 1236 (1934); *Estate of Johnson v. Commissioner*, 88 T.C. 225 (1987), affd. without published opinion 838 F.2d 1202 (2d Cir. 1987); *Cramp Shipbuilding Co. v. Commissioner*, 14 T.C. 33, 37 (1950), affd. sub nom. *Commissioner v. Harriman Ripley & Co.*, 202 F.2d 280 (3d Cir. 1953).

There are three types of closing agreements. Form 866 closing agreements are used to close the total tax liability of a taxpayer for a past taxable year or years. See 13 J. Mertens, Law of Federal Income Taxation, sec. 52.01, at 15-16 (1987 rev.). Form 906 closing agreements are used

---

[2]Sec. 7121 provides:

SEC. 7121. CLOSING AGREEMENTS.

(a) AUTHORIZATION.—The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

(b) FINALITY.—If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

where there is an agreement as to a specific matter affecting tax liability; a Form 906 closing agreement may be used with regard to specific items in past or future years. See J. Mertens, *supra* at 16. The third type of closing agreement is a combined agreement which relates to both total tax liability for a past year or years and specific matters. See J. Mertens, *supra* at 17.

Form 866 closing agreements are binding upon the parties only as to the tax period specifically stated in the agreement; a party is not precluded from challenging for a different year a matter agreed upon in a Form 866 closing agreement. See, e.g., *Export Leaf Tobacco Co. v. Commissioner*, 78 F.2d 163 (2d Cir. 1935), affg. 31 B.T.A. 28 (1934); *Phillips v. Commissioner*, 8 T.C. 1286 (1947), affd. 178 F.2d 270 (3d Cir. 1949). Form 906 agreements are binding as to the matters agreed upon for the taxable period stated in the agreement, which may also include future years. Sec. 7121(b); *Cramp Shipbuilding Co. v. Commissioner, supra.*

The closing agreements petitioners rely upon are Form 906 agreements. Petitioners argue that in the closing agreements at issue, it was agreed that Argosy and its constituent trust partners were valid entities and that the trusts were not grantor trusts under sections 671 through 679 and, therefore, respondent is precluded from making arguments to the contrary in this case. Petitioners have misconstrued the closing agreements for purposes of the matters at issue in this controversy.

The matters agreed upon in the closing agreements have been set forth in our background statement above. Nowhere in these documents is there an agreement that Argosy and its constituent trusts are valid entities or that the trusts are not grantor trusts under sections 671 through 679.

Petitioners maintain, however, that the closing agreements are based upon the premises that the entities at issue are valid entities and that the trusts at issue are not grantor trusts. Petitioners also cite language from the recitals in the closing agreements to support their position.

However, section 7121 does not bind the parties as to the premises underlying their agreement; they are bound only as to the matters agreed upon. Sec. 7121(b). In fact by excluding, as grounds for rescission, mistakes of fact or law,

the statute contemplates that the parties may premise their agreement upon such a mistake. See *Wolverine Petroleum Corp. v. Commissioner, supra.* Although the parties are bound by their mistakes as to the matters agreed upon in the closing agreement (see *Estate of Johnson v. Commissioner, supra*), section 7121 does not require the parties to perpetuate the same mistakes with regard to matters that were not agreed upon.

Nor is respondent barred by the recitals in the closing agreements from litigating the matters at issue in this controversy. Although the recitals in a closing agreement are important for interpreting the agreement, they are not binding upon the parties for purposes of resolving an issue concerning a matter other than the matter agreed upon. The bona fides of Argosy and its constituent trusts and the character of the trusts in question in this case are matters other than the matters agreed upon in the closing agreements.

The dispute that led to the FGRC royalty closing agreement concerned the proper allocation of the profits and losses of FGRC to its partners and whether deductions taken for royalty payments for rights to the Fantasy Galaxy record catalog were allowable to the partnership. The other two closing agreements concerned the payment of excise tax under section 1491 for the sale of Fantasy. The matter at issue in this case concerns the proper allocation of income from the motion picture "One Flew Over the Cuckoo's Nest" and of certain interest income that petitioner assigned to the entities whose bona fides respondent now challenges. Accordingly, respondent is not precluded from arguing in this case that the entities in question are shams or that the trusts are grantor trusts.

Relying on *Estate of Johnson v. Commissioner, supra*, petitioners contend that the parties to a Form 906 closing agreement may not take a position in a later controversy that is inconsistent with their position under the closing agreement. Because respondent took the position under the closing agreements that Argosy and its constituent trusts were valid and that the constituent trusts were not grantor trusts, petitioners argue that respondent is precluded from

taking an inconsistent position in this case. Petitioners' reliance on *Estate of Johnson* is misplaced.

In *Estate of Johnson*, the decedent had purchased two life insurance policies on his life in the total amount of $7 million and assigned them as collateral to guarantee a loan from a bank to a corporation of which he was the majority shareholder. After the decedent died, a dispute arose as to whether the insurance company was liable for payment on the policies. The taxpayer and the bank entered into an agreement under which the bank would release the taxpayer from liability on the loan to the corporation, and the parties would work together to collect the insurance proceeds. Eventually, the insurance company paid the bank $4,200,000 of insurance proceeds, and the bank assigned to the taxpayer an interest in the notes documenting the loan to the extent of $4,200,000.

On its Federal estate tax return, the taxpayer in *Estate of Johnson* took the position that it had no right to the insurance proceeds and attributed no value to its right to its subordinated participation in the bank loan. Respondent disagreed with the taxpayer's valuation, and the parties entered into a closing agreement that established a value for estate tax purposes and an unadjusted basis for income tax purposes of $600,000 for the taxpayer's right to subordinated participation in the bank loan. Subsequently, the corporation paid its debt to the bank and to the taxpayer, and the taxpayer, concluding that it was entitled to increase its basis in its subordinated participation in the loans by the $4,200,000 that the insurance company paid, filed amended returns claiming a refund based on the increase in basis.

The taxpayer in *Estate of Johnson* argued that it had constructively received the insurance proceeds and transferred them to the bank in exchange for the notes from the corporation. We held in *Estate of Johnson* that although the basis of an asset set in a closing agreement may be adjusted to reflect subsequent events, the taxpayer could not contradict the position he had taken, and the respondent had accepted, in entering into the closing agreement, i.e., that the taxpayer had received no right to the life insurance proceeds. We explained:

[At the time the closing agreement was entered into] the parties knew about the very transaction that petitioner now seeks to characterize as a subsequent event that requires an adjustment to basis. Payment of the insurance proceeds was the heart of the controversy settled by the closing agreement. The bank had been paid; petitioner held the AVC notes and was no longer liable to the bank; and the only remaining issue was the value of petitioner's prospect of recovering on the notes. Thus, regardless of whether petitioner's current position is correct, it contradicts the position petitioner agreed to in entering into the closing agreement and, having entered into that agreement, petitioner is bound by it. See *Cramp Shipbuilding Co. v. Commissioner*, 14 T.C. at 37. * * * [88 T.C. at 232-233; fn. ref. omitted.]

In *Estate of Johnson*, we relied upon the premises underlying the parties' agreement to determine what matters they had agreed upon in making the basis valuation. Accordingly, the taxpayer was barred from modifying the agreement by taking an inconsistent position as to the same matter that was agreed upon, i.e., the nature of the transaction establishing the value of the taxpayer's basis in the notes. In this case, respondent is not taking an inconsistent position with regard to the matters that were agreed upon in the closing agreements. Nor does respondent seek to annul, modify, set aside, or disregard the agreements. Instead, respondent is taking a position inconsistent with the position assumed as a basis for settling by closing agreements tax disputes involving different issues, and in two instances, different types of taxes from those in the case before us. Accordingly, respondent is not bound to take the same position in this case.

Petitioners' reliance on *Temple v. United States*, 11 Cl. Ct. 302 (1986), is also misplaced. In *Temple*, the taxpayer entered into a Form 906 closing agreement with respondent agreeing that certain issues regarding his tax liability would be resolved in a manner consistent with the resolution of an identified test case. After the test case was resolved adversely to the taxpayer, a dispute arose as to the application of the closing agreement to the taxpayer's situation. In interpreting the closing agreement, the court considered the entire agreement and the circumstances under which it was executed.

The issue in *Temple* concerned the interpretation of the closing agreement for purposes of its application to the

matter that had been agreed upon. In this case, petitioners seek to use the recitals contained in the closing agreements and the premises underlying the agreements to prevent respondent from taking an inconsistent position in a case that involves a matter different from the matters that had been agreed upon in the closing agreement. This cannot be done.

*Cramp Shipbuilding Co. v. Commissioner, supra*, is not to the contrary. As in *Estate of Johnson* and in *Temple*, this Court in *Cramp Shipbuilding* considered the circumstances under which the closing agreement was executed for purposes of interpreting the agreement. In none of these cases was a party bound to a position taken under the closing agreement in regard to a matter other than the matter that had been agreed upon.

Nor does *Parish & Bingham Corp. v. United States*, 44 F.2d 993 (Ct. Cl. 1930), help petitioners in this case. In *Parish & Bingham Corp.*, the taxpayer sought a refund of interest paid on a deficiency assessment agreed to in a closing agreement. The taxpayer argued that because the closing agreement mentioned only the tax liability and not interest, it was entitled to a claim for interest.

Although the closing agreement in *Parish & Bingham Corp.* did not refer to interest, the court held that the taxpayer's suit was barred because the closing agreement settled the entire tax liability of the taxpayer for the year in issue. Accordingly, the court concluded that the matter of interest had been included within the terms of the agreement. The court explained:

> When a closing agreement is entered into between the taxpayer and the Commissioner under section 1106(b), it must, of necessity, embrace every element of the Commissioner's determination; otherwise it is not an agreement under that section, and, when so entered into, it is final and conclusive as to all questions with respect to which the Commissioner has made a determination or as to which he is by law required to make a determination. * * * [44 F.2d at 997.]

The agreement in *Parish & Bingham Corp.* was executed under section 1106(b) of the Revenue Act of 1926, Pub. L. 20, 44 Stat. 9, 113, which provided:

> (b) If after a determination and assessment in any case the taxpayer has paid in whole any tax or penalty, or accepted any abatement, credit,

or refund based on such determination and assessment, and an agreement is made in writing between the taxpayer and the Commissioner, with the approval of the Secretary, that such determination and assessment shall be final and conclusive, then (except upon a showing of fraud or malfeasance or misrepresentation of fact materially affecting the determination or assessment thus made) (1) the case shall not be reopened or the determination and assessment modified by any officer, employee, or agent of the United States, and (2) no suit, action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any court of the United States.

Under section 1106(b) of the Revenue Act of 1926, closing agreements were final as to the entire determination and assessment of tax for the year or years to which the agreement pertained. The Court of Claims concluded that a closing agreement entered into pursuant to section 1106(b) of necessity embraced every element of the Commissioner's determination, including interest. The parties in *Parish & Bingham Corp.* were bound to matters not mentioned in the closing agreement because the statute in effect at the time of the agreement dictated that those matters were part of the agreement.

Section 1106(b) of the Revenue Act of 1926 has been amended.[3] The statute that controls the closing agreements in this case is section 7121 which determines finality only as to the "matters agreed upon." Under section 7121 a court may not include as part of the agreement matters other than the matters specifically agreed upon and mentioned in the closing agreement.[4]

To reflect the foregoing,

*An appropriate order will be issued.*

---

[3]Sec. 1106(a) of the Revenue Act of 1926 was amended by sec. 606 of the Revenue Act of 1928, Pub. L. 562, 45 Stat. 791, 874, which in turn was amended by sec. 801 of the Revenue Act of 1938, Pub. L. 554, 52 Stat. 447, 573. In 1954 Congress enacted sec. 7121 to amend sec. 801 of the Revenue Act of 1938. 1954 Internal Revenue Code, Pub. L. 591, 68A Stat. 849. Sec. 7121 was amended by sec. 1906(b)(13)(A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1825. Sec. 7121, as amended by the Tax Reform Act of 1976, is the statute that applies in this case.

[4]We note that under sec. 7121 it is assumed that unless there is an issue with respect to interest liability, the parties intend that interest will be collected or allowed in addition to the amounts of tax or refund determined pursuant to the terms of the closing agreement. For respondent's position on this issue, see sec. 6.16 Rev. Proc. 68-16, 1968-1 C.B. 770-786.