T.C. Memo. 1998-94

UNITED STATES TAX COURT

HUGH AND LINDA JANOW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17775-87.                    Filed March 4, 1998.

<u>Hugh Janow</u>, for petitioners.

<u>Lawrence L. Davidow</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial

Judge John J. Pajak, pursuant to the provisions of section

7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and

Rules 180, 181, and 183.[1]  The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

PAJAK, Special Trial Judge:  Respondent determined deficiencies in, additions to tax, and increased interest in petitioners' Federal income taxes as follows:

| | | Additions to Tax and Increased Interest | | | | |
|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6659 | Sec. 6621(c) |
| 1978 | $39,133 | $1,956.65 | -- | -- | -- | * |
| 1979 | 34,365 | 1,718.25 | -- | -- | -- | * |
| 1980 | 94,226 | 4,711.30 | -- | -- | -- | * |
| 1981 | 34,181 | -- | $1,709.05 | ** | $1,910.70 | * |

   * Amount equal to 120 percent of the interest payable under sec. 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.
   ** Amount equal to 50 percent of the interest due on $34,181, the portion of the underpayment attributable to negligence.

This case was submitted fully stipulated under Rule 122. The stipulated facts are so found.  For clarity and convenience, the facts and opinion have been combined.

The Court must decide whether a Closing Agreement executed by the parties entitles petitioners to exclude from income guaranteed payments received by petitioner husband from Federal Arbitrage Company in 1980.  (An issue with respect to Securities Arbitrage Co., another partnership, was resolved in an opinion of

---

   [1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

this Court in Janow v. Commissioner, T.C. Memo. 1996-289 (Janow I).)

Petitioners resided in West Nyack, New York, when their petition was filed.

During 1980, Hugh Janow (petitioner) was a general partner in a limited partnership, Federal Arbitrage Company (Federal). Federal is one of several partnerships that comprise respondent's Arbitrage Management National Tax Litigation Project. Petitioner is also a practicing member of the Bar of this Court.

For taxable year 1980, petitioner received a Schedule K-1 from Federal reflecting his distributive share of items of partnership income and loss, reported by Federal. The Schedule K-1 shows that petitioner received $20,000 as a guaranteed payment in that year.

On Schedule E of their 1980 Federal income tax return, petitioners reported, with respect to Federal, a loss in the amount of $130,260. Petitioners also reported the $20,000 guaranteed payment received by petitioner in that year.

In the explanation of adjustments attached to the notice of deficiency, respondent used petitioners' partnership loss as reported on their 1980 return to make an adjustment. Respondent did not make any determinations or adjustments with regard to the guaranteed payment petitioner received from Federal in 1980 and reported on petitioners' return for that year.

After reviewing the record, we find that petitioners correctly reported the guaranteed payment on their 1980 return, that respondent made no adjustments with respect to the guaranteed payment, that the petition does not raise any issue as to the guaranteed payment, and that the answer does not raise such an issue. In sum, the guaranteed payment should not be an issue before this Court. Nevertheless, inasmuch as the parties have addressed the matter otherwise, we shall do likewise. We shall consider the issue as tried by consent. Rule 41(b)(1).

Respondent initially prepared computations, which included a Statement of Account and Audit Statement (Computations). Over a period of months, the parties revised the Computations. The Computations did not reflect any adjustments to the guaranteed payment reported as income by petitioners on their 1980 return.

In the Form 906, Closing Agreement On Final Determination Covering Specific Matters (the Closing Agreement), the parties agreed to the following pertinent matters:

> WHEREAS, there now exists a dispute between the taxpayer(s) and the Commissioner of the Internal Revenue with respect to the taxability of the taxpayers' distributive share of gains and losses from listed entity(ies) [hereinafter "the partnership(s)"] arising from securities trading transactions conducted through Arbitrage Management for all taxable years and;

> WHEREAS, the taxpayer and the Commissioner wish to determine with finality all of the federal income tax consequences of the taxpayers' interest in the partnerships for all taxable years (listed below);

| Name of First Tier Partnership | First Tier TIN | Years |
|---|---|---|
| Federal Arbitrage | 13-2964750 | 1978-1988 |

NOW IT IS HEREBY DETERMINED AND AGREED for Federal income tax purposes that:

1.   In each year they had an interest in the partnerships, the taxpayers will recognize their distributive share of the partnerships' net trading gain or loss from the Arbitrage Management securities trading transactions.  The net trading gain or loss equals the annual increase or reduction in the taxpayers' K-1 capital account, plus any capital distributions received from the partnerships during the year.  The taxpayers will recognize income to the extent of such capital distribution.

*   *   *   *   *   *   *

7.   In accordance with paragraphs 1 through 6, the attached TABLE 1, which is incorporated into this agreement by this reference, represents all of the taxpayers' taxable income, deductions, gains and losses from their interest in the partnerships.

8.   The annual tax underpayments and overpayments attributable to the taxpayers' interest in the partnership shall be calculated by comparing the amounts in TABLE 1 to the partnerships items reported by the taxpayer(s) on their original returns.  * * *

*   *   *   *   *   *   *

10.  Other than as provided in paragraph 8, no additions to the tax or penalties shall be imposed with respect to the taxpayers' interest in the partnership, including the additions and penalties described in I.R.C. Section 6653, 6659, and 6661.

*   *   *   *   *   *   *

13.  The taxpayers' taxable income for any taxable year shall not be increased at any time after the execution of this agreement due to the taxpayers' interest in the partnerships, except to the extent that the taxpayer receive actual distributions of cash and/or property from the partnerships after the execution of this agreement.

\*   \*   \*   \*   \*   \*   \*

TABLE 1 (In pertinent part)

| YEAR | TOTAL ORDINARY ALLOWED | SHORT TERM GAIN (LOSS) | LONG TERM GAIN (LOSS) |
|------|------------------------|------------------------|-----------------------|
| 1980 | (21,822) | 22,966 | 3,104 |

After the parties executed the Closing Agreement, respondent mailed to petitioners a proposed Decision and overpayment Stipulation, together with the revised Computations. Respondent, by letter, twice asked petitioners to execute and return the proposed Decision and overpayment Stipulation. Petitioners did not sign the proposed Decision and overpayment Stipulation.

Nearly 2 years after the Computations had last been revised by the parties, petitioner advised respondent by letter that he believed the proposed Decision document and related Computations did not accurately reflect the terms of the Closing Agreement and consequently were unacceptable. In essence, petitioner claimed for the first time that the Closing Agreement did not mandate inclusion of the guaranteed payment petitioner actually received in 1980.

Section 7121(a) authorizes respondent to enter into an agreement in writing with any person relating to the liability of such person in respect of any internal revenue tax for any taxable period. A Closing Agreement is binding on the parties as to the matters agreed upon and may not be annulled, modified, set aside, or disregarded in any suit, action, or proceeding, except

upon a showing of fraud, malfeasance, or misrepresentation of a material fact. Sec. 7121(b); Zaentz v. Commissioner, 90 T.C. 753, 760 (1988).

Neither respondent nor petitioners ask us to set aside the Closing Agreement. Moreover, they do not contend that there exists any fraud, malfeasance, or misrepresentation of a material fact. Both parties assert that the Closing Agreement is unambiguous. They disagree, however, with respect to the proper interpretation of the Closing Agreement.

Ordinary principles of contract law govern the interpretation of Closing Agreements. Rink v. Commissioner, 100 T.C. 319, 325 (1993), affd. 47 F.3d 168 (6th Cir. 1995). Contract law principles generally direct that we look within the "four corners" of the Closing Agreement, unless it is ambiguous as to essential terms. Id. at 325.

The parties chose Form 906 as their Closing Agreement. Form 906 is used where there is an agreement with respect to the closing of specific matters affecting tax liability. Estate of Magarian v. Commissioner, 97 T.C. 1, 5 (1991). A Form 906 Closing Agreement is a final and conclusive agreement that is binding as to the matters agreed upon for the stated taxable year. Qureshi v. Commissioner, T.C. Memo. 1996-169.

We are again faced with construing a closing agreement entered into by petitioners and respondent. We start with petitioners' 1980 Federal income tax return on which petitioners

reported a $20,000 guaranteed payment and a partnership ordinary loss of $130,260. Turning to the statutory notice of deficiency, we find that respondent made a substantial adjustment to the partnership ordinary loss claimed by petitioners. No adjustment was made to the $20,000 guaranteed payment.

Ultimately, the parties executed a Form 906. The first "WHEREAS" clause refers to a dispute "with respect to the taxability of the taxpayer's distributive share of gains or losses from [Federal] arising from security trading transactions * * *". The second "WHEREAS" clause states, that the parties wish to determine "all of the federal income tax consequences of the taxpayers' interest in the partnerships". Reading these clauses, together with the remainder of the Closing Agreement, leads us to conclude that the specific adjustments agreed upon relate only to partnership adjustments. Thus, the $21,822 allowable loss is to be deducted from the claimed $130,260, which results in an adjustment of $108,438. This is respondent's position.

Petitioners argue that the Closing Agreement should be interpreted to exclude the $20,000 guaranteed payment which petitioner received in 1980 and which petitioners reported on their 1980 return. Petitioners' arguments are based on the premise that the absence of any specific provision in the Closing Agreement covering the $20,000 guaranteed payment necessarily

means that such guaranteed payment must be excluded. We disagree.

We find petitioners' arguments to be an incorrect reading of the Closing Agreement. Form 906 binds the parties only to specific matters agreed upon. Zaentz v. Commissioner, supra at 761. As we read the Closing Agreement, the parties agreed to settle with respect to petitioners' taxable income, gains, and losses from their interest in Federal. Nowhere in the Closing Agreement is there a provision excluding the $20,000 guaranteed payment. In fact, the parties stipulated that the treatment to be accorded to guaranteed payments was not expressly discussed by either party during the settlement negotiations. We reiterate what we stated in Janow I. The definition of a "guaranteed payment" to a partner supports this interpretation of the Closing Agreement. A guaranteed payment is a payment made by a partnership to a partner for services or for the use of capital and is considered as made to one who is not a partner, to the extent such payment is determined without regard to the income of the partnership. Sec. 707(c); sec. 1.707-1(c), Income Tax Regs. For the purposes of sections 61(a) and 162(a), guaranteed payments are not considered part of a partner's distributive share of partnership income. Pursuant to section 707, a partner shall include in his income for a taxable year guaranteed payments which are made to him in a partnership taxable year

ending with or within that taxable year.  Sec. 1.706-1, Income Tax Regs.

We note that the guaranteed payment reported on petitioners' 1980 Federal income tax return was accepted by respondent and was never in dispute until after the execution of the Closing Agreement.  In the 2 years in which the parties negotiated the Computations, petitioners never raised any objections to either the original or the revised Computations with respect to the failure to exclude the $20,000 guaranteed payment.  Clearly, petitioners had ample time to review the Computations and to request the necessary changes.

In any event, if the parties had intended to settle with respect to the exclusion of the $20,000 guaranteed payment, they would have included specific language to that effect.  They did not do so.  Absent specific language excluding the $20,000 guaranteed payment, the Closing Agreement must not be read to imply its exclusion.  Accordingly, we hold that the Closing Agreement does not require the $20,000 guaranteed payment to be excluded from income.

To the extent we have not addressed petitioners' other arguments, the Court finds them to be without merit.

Decision will be entered
under Rule 155.