T.C. Memo. 2011-64

UNITED STATES TAX COURT

EDWARD M. KURATA AND LORRAINE A. KURATA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5217-09.                    Filed March 16, 2011.

William E. Taggart, Jr., and Barbara N. Doherty, for
petitioners.

Daniel J. Parent, for respondent.


MEMORANDUM OPINION

HAINES, Judge:  This case is before the Court on
respondent's motion for summary judgment filed pursuant to Rule
121.[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986, as amended, and all Rule
                                        (continued...)

We must decide whether transactions in which petitioners transferred shares of Foundry Network, Inc. (FDRY), to Derivium Capital, L.L.C. (Derivium) in exchange for a total of $7,404,720 were sales or loans for Federal tax purposes in 2000.

## Background

At the time of the filing of the petition, petitioners resided in California.

In 2000 petitioners were introduced to Derivium and its 90-percent-stock-loan program. We recently described the details of this program in Calloway v. Commissioner, 135 T.C. 26 (2010), and Shao v. Commissioner, T.C. Memo. 2010-189. As we discussed in Calloway and Shao, under the 90-percent-stock-loan program Derivium would purport to lend 90 percent of the value of securities pledged to Derivium as collateral. Petitioners do not dispute the facts relevant to their participation in Derivium's 90-percent-stock-loan program and concede that their transactions are "quite similar" to the transactions discussed in Calloway.

Petitioners transferred 65,013 and 25,000 shares of FDRY to Derivium on April 27 and June 13, 2000, respectively. In each of the transactions at issue, Derivium sold the FDRY stock received from petitioners within several days of receipt. On May 3, 2000, Derivium transferred $4,638,654 (90 percent of the value of

---

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure.

62,313 shares of FDRY) to petitioners, and on June 21, 2000, Derivium transferred an additional $2,766,066 to petitioners (90 percent of the value of 27,700 shares of FDRY).[2] Each transfer was made pursuant to a "Master Agreement to Provide Financing and Custodial Services" (the master agreements). Each master agreement provides:

> This Agreement is made for the purpose of engaging * * * [Derivium] to provide or arrange financing(s) and provide custodial services to * * * [petitioners] with respect to certain securities and assets ("Properties") to be pledged as security, the details of which financing and Properties are to be set out on loan term sheets. * * *

In executing the master agreements, petitioners granted Derivium complete control over the transferred FDRY stock. Paragraph 3 of each schedule D, Disclosure Acknowledgment and Broker/Bank Indemnification, of each master agreement provides, in pertinent part:

> [Petitioners] understand that by transferring securities as collateral to * * * [Derivium] under the terms of the Agreement, * * * [petitioners] give * * * [Derivium] the right, without notice to * * * [petitioners], to transfer, pledge, repledge, hypothecate, rehypothecate, lend, short sell and/or sell outright some or all of the securities during the period covered by the Loan. * * * [Petitioners understand] that * * * [Derivium] has the right to receive and retain the benefits from any such transaction and that the * * * [petitioners are] not entitled to these benefits during the term of the loan.

---

[2]When Derivium transferred $4,638,654 to petitioners on May 3, 2000, it continued to hold 2,700 shares of FDRY received on Apr. 27, 2000. Derivium transferred 90 percent of the value of these 2,700 shares as part of the $2,766,066 paid to petitioners on Jun. 21, 2000.

Accordingly, Derivium funded the "loan" payments made to petitioners by selling the FDRY stock.

In connection with each master agreement, Derivium sent petitioners a schedule setting forth the essential terms of the transactions (schedule A).  Pursuant to each schedule A, the alleged loans:  (1) Had a term of 3 years at an interest rate of 10.5 percent annually accruing until and due at maturity; (2) did not permit prepayments before maturity; (3) did not include margin requirements; (4) could not be called; (5) were nonrecourse; and (6) were renewable at the borrowers' request.

Petitioners did not make any payments to Derivium during the term of each "loan".  The price per share of FDRY ranged between $82 and $87 when petitioners transferred 65,013 shares to Derivium pursuant to the first master agreement.  At maturity of the first "loan", the price per share of FDRY was approximately $10.38.  The price per share of FDRY ranged between $110 and $111.87 when petitioners transferred 25,000 shares to Derivium pursuant to the second master agreement.  At maturity of the second "loan", the price per share of FDRY was approximately $14.81.  Accordingly, rather than repaying the "loans" at maturity in 2003, petitioners walked away from each "loan", keeping the $4,638,654 and the $2,766,065 received from Derivium, respectively, and forfeiting the FDRY stock pledged as collateral.

Petitioners' basis in the FDRY stock transferred to Derivium in both transactions was 10 cents per share. Petitioners acquired the FDRY stock transferred to Derivium in both transactions during February and March of 2000. Petitioners did not report the $4,638,654 or the $2,766,065 received from Derivium on their 2000 Federal income tax return. Rather, petitioners reported the transactions as stock sales in 2003, the year the "loans" reached maturity.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine issue of material fact and a decision may be rendered as matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). The Court will view any factual material and inferences in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). We conclude that there are no genuine issues of material fact, the transactions at issue were sales in 2000 for Federal income tax purposes, and a decision may be rendered as a matter of law.

As discussed above, the transactions at issue in this case are nearly identical to those we described in Calloway v. Commissioner, 135 T.C. 26 (2010). The taxpayers in Calloway and petitioners both entered into the 90-percent-stock-loan program with Derivium pursuant to the same master agreement and "loan" terms. In Calloway, we held that the transaction was not a loan and that the taxpayers sold their stock in the year the stock was transferred to Derivium. In reaching that conclusion, we analyzed the transactions at issue by applying the following factors: (1) Whether legal title passes; (2) how the parties treat the transaction; (3) whether an equity interest in the property is acquired; (4) whether the contract creates a present obligation on the seller to execute and deliver a deed and a present obligation on the purchaser to make payments; (5) whether the right of possession is vested in the purchaser; (6) which party pays the property taxes; (7) which party bears the risk of loss or damage to the property; and (8) which party receives the profits from the operation and sale of the property. See id. at 34; see also Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1237-1238 (1981).

Petitioners concede the transactions at issue are "quite similar" to the transactions in Calloway. In fact, petitioners argue only a single factual distinction from Calloway. Petitioners argue that while the taxpayers in Calloway failed to

report the 90-percent-stock-loan program with Derivium on its Federal income tax returns, petitioners reported the transactions as sales in 2003, when the "loans" reached maturity and they decided to walk away from the transactions.

Without any further explanation, petitioners argue this distinction from Calloway v. Commissioner, supra, is significant. We disagree. The fact that petitioners treated the transactions as loans in 2000 and reported them as sales in 2003 does not make them so. In fact, as respondent suggests in brief, the only material significance of petitioners' reporting position in 2003 is that it supports the argument that petitioners are not subject to penalties. No penalties have been determined.

Petitioners further argue that on summary judgment all factual issues must be resolved in favor of the nonmoving party and, therefore, an analysis of the eight factors used by this Court in Calloway to determine whether a transaction is a loan or a sale requires this Court to deny respondent's motion. This argument is without merit. Petitioners have not analyzed any of the eight factors discussed above, nor have petitioners presented relevant factual distinctions from Calloway. We find any further analysis to be unnecessary. Accordingly, consistent with our holding in Calloway, we hold that petitioners sold the FDRY stock in 2000, and we sustain respondent's determinations with respect to the transactions at issue.

We have considered all of petitioners' contentions, arguments, and requests that are not discussed herein, and we conclude that they are without merit or irrelevant.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.