*Decision will be entered under Rule 50.*

B. D. PHILLIPS, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9300, 9301, 9302, 9303, 9304, 9305, 9306, 9307, 9309.
Promulgated June 26, 1947.

[1] Proceedings of the following petitioners are consolidated herewith: T. W. Phillips, Jr., Docket No. 9301; Thomas W. Phillips III, Docket No. 9302; Roger S. Phillips, Docket No. 9303; Idell H. Phillips, Docket No. 9304; Margaret Phillips Succop, Docket No. 9305; Estate of Alma J. S. Phillips, Deceased, Docket No. 9306; Estate of Undine C. Phillips, Deceased, Docket No. 9307; Ruth Phillips Bisiker, Docket No. 9309.

*Sidney B. Gambill, Esq.*, and *Rolland L. Ehrman, Esq.*, for the petitioners.

*Stanley L. Drexler, Esq.*, for the respondent.

**OPINION.**

HARRON, *Judge*: Respondent determined that the distributions which each of the petitioners received in 1941 from Pennsylvania

Investment & Real Estate Corporation were taxable as dividends under section 115 (a) of the Internal Revenue Code. The ultimate question is whether the distributions were made from earnings or profits of the corporation accumulated after February 28, 1913. Pennsylvania Investment & Real Estate Corporation had no current earnings in 1941 and the parties are agreed that it had no accumulated earnings or profits of its own. Respondent contends that under the rule of *Commissioner* v. *Sansome*, 60 Fed. (2d) 931, Pennsylvania Corporation acquired accumulated earnings from T. W. Phillips Gas & Oil Co. in the nontaxable reorganization which took place in 1928. Petitioners contend, however, that an independent determination of the amount, if any, of the accumulated earnings or profits which the Pennsylvania Corporation acquired from T. W. Phillips Gas & Oil Co. is precluded by reason of the execution of a closing agreement under section 3760 of the Internal Revenue Code covering the income tax liability of Pennsylvania Corporation for the years 1938 and 1939.

In the years 1938 and 1939 Pennsylvania Corporation made distributions to its shareholders and claimed credits for dividends paid. Upon an audit in 1940 of Pennsylvania Corporation's returns for 1938 and 1939, portions of the dividends paid credit claimed for those years were disallowed. The disallowance was explained on the ground that the distributions had been made in excess of Pennsylvania Corporation's accumulated earnings or profits and did not constitute taxable dividends includible in the dividends paid credit. Thereafter a closing agreement on Form 866 as to final determination of tax liability of Pennsylvania Corporation for the years 1938 and 1939 was entered into between the corporation and respondent, whereby the parties mutually agreed that the tax liability of Pennsylvania Corporation for the years 1938 and 1939 as determined and set forth in the agreement was to be final and conclusive, subject, however, to the provisions of section 3801 of the Internal Revenue Code. The liability so determined and set forth in the closing agreement was the exact amount determined by respondent upon the audit of Pennsylvania Corporation's returns for 1938 and 1939.

Petitioners contend that, although the closing agreement recites merely that the parties have agreed to a final amount of tax liability for the years 1938 and 1939, the computation of that tax liability involved a recognition by respondent that Pennsylvania Corporation had no accumulated earnings, *Sansome* or otherwise, since portions of dividends paid credit were disallowed for this reason; and that, since Pennsylvania Corporation accumulated no earnings after 1939, it follows that in the taxable year 1941 it also had no accumulated earnings from which dividends could be paid.

Respondent, on the other hand, contends that the agreement merely closed the tax liabilities of Pennsylvania Corporation for the years

1938 and 1939 and that the methods or elements used in arriving at such final amounts of tax liabilities are in no way binding upon the parties. In short, respondent claims that the closing agreement as to the final determination of tax liability of Pennsylvania Corporation for the years 1938 and 1939 was not a final determination conceding forever that Pennsylvania Corporation inherited no accumulated earnings or profits from T. W. Phillips Gas & Oil Co. in the non-taxable reorganization under the rule of the *Sansome* case.

At the hearing, the parties agreed to postpone proof of the amount, if any, of accumulated earnings or profits which Pennsylvania Corporation acquired from T. W. Phillips Gas & Oil Co., pending decision on the effect of the closing agreement. The question to be decided at the present stage of the proceedings, therefore, is whether the closing agreement covered only the amount of tax liability of the Pennsylvania Corporation for the years 1938 and 1939, without regard to any specific matters or methods used in computing the amount of such tax liability, or whether it was also a specific agreement that Pennsylvania Corporation acquired no accumulated earnings or profits from T. W. Phillips Gas & Oil Co. in the nontaxable reorganization in 1928.

The closing agreement was entered into in accordance with section 3760 of the Internal Revenue Code. The provisions of section 3760 are set forth in the margin.[2] In brief, the section authorizes the Commissioner and the taxpayer to enter into an agreement relating to the tax liability of the taxpayer which, except for fraud, mal-feasance, or misrepresentation of a material fact, shall be final and conclusive as to the matters agreed upon. As shown by the regulations, the matter agreed upon may relate to the total tax liability of the taxpayer, or it may relate to one or more separate items affecting the tax liability of the taxpayer, as, for example, the value of property on a specified date, or the cost basis of shares of stock, some of which may be sold in one year and others in future years. Regulations 103, Appendix par. 47. At least since 1934 the Treasury has had two forms on which closing agreements may be executed. XIII-1

---

[2] SEC. 3760. CLOSING AGREEMENTS.

(a) AUTHORIZATION.—The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for which he acts) in respect of any internal revenue tax for any taxable period.

(b) FINALITY.—If such agreement is approved by the Secretary, the Under Secretary, or an Assistant Secretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) The case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

(2) In any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith shall not be annulled, modified, set aside, or disregarded.

C. B. 162. Form 866, which was used in the instant case, relates to the total tax liability of the taxpayer, and, as set forth in the findings, merely states that the taxpayer and Commissioner mutually agree that the amount of tax liability which is set forth in the agreement shall be final and conclusive. The other form on which a closing agreement may be executed is Form 906, which relates to a final determination covering specific matters and provides that the Commissioner and the taxpayer mutually agree that the matters so determined and set forth on the form shall be final and conclusive.

The purpose of the statute in providing for closing agreements as to final determination of tax liability was to enable the taxpayer and the Government finally and completely to settle all controversies in respect of the tax liability for a particular year or years, and to protect the taxpayer against a further demand by the reopening of a case as a result of a different view of the matter being taken by the Government officers, or as the result of subsequent court decisions prior to the expiration of the statute of limitations, and to prevent the filing of additional claims for refund or the institution of suit by the taxpayer for the same reasons. *Wolverine Petroleum Corporation* v. *Commissioner*, 75 Fed. (2d) 593, affirming 29 B. T. A. 1236; *Bankers' Reserve Life Co.* v. *United States*, 42 Fed. (2d) 313.

In some instances a closing agreement on Form 866, relating to the final determination of tax liability, is entered into when the taxpayer and the Government have made mutual concessions, a sort of give and take affair, in the settlement of disputed issues. Under such circumstances there is no intention of making binding commitments as to the correct treatment of the various items. The parties are only concerned with the final amount of tax liability. In any event, it has become settled that when the parties agree as to the final determination of tax liability for a particular year the methods or elements used in arriving at such final amount of liability are in no way binding upon the parties for other tax years. This rule was expressed in *Smith Paper Co.*, 31 B. T. A. 28; affd., 78 Fed. (2d) 163, as follows:

These agreements, authorized only, as in the present case, by the Commissioner, with the approval of the Secretary of the Treasury, are localized and limited in their operations by the statute, through which, alone, they are possible, to tax liabilities for definite periods covered therein. Neither the cited statutory provision permitted nor the instruments executed thereunder here included any agreement binding either party thereto to recognize any element necessary to the computation of a tax liability for 1928, and thus permit the perpetuation of a palpable error. The present agreements closed certain tax liabilities for periods within 1927 and nothing else. The method used in computing the amounts of these liabilities for that year, whether proper or otherwise, could not and did not conclude the respondent in his computation of these disputed tax liabilities for 1928. *W. C. Mitchell Co.*, 27 B. T. A. 645; *Alabama Mineral Land Co.*, 28 B. T. A. 586; *Phoenix Ins. Co.*, 29 B. T. A. 291; *Wolverine Petroleum Co.*, 29 B. T. A. 1236 The contested deficiencies are approved.

See also, *W. C. Mitchell Co.*, 27 B. T. A. 645; and *Alabama Mineral Land Co.*, 28 B. T. A. 586.[²]

We are unable to find in the record in this case any basis for distinguishing this case from the *Mitchell*, *Alabama*, and *Smith* cases cited above. The determinations which the respondent made upon audit of Pennsylvania Corporation's returns for 1938 and 1939 resulted in deficiencies in income tax and surtax on personal holding company income for both years. Pennsylvania Corporation accepted the respondent's determinations and submitted a closing agreement on Form 866 for the express purpose of securing final determinations for 1938 and 1939 in order that, as a personal holding company, it could receive the deficiency dividend credit allowed by section 407 of the 1938 Revenue Act and section 506 of the Internal Revenue Code. Under those sections, such credit was allowable if the amount of the deficiency had been established by a closing agreement. The evidence shows clearly that the respondent, in executing the closing agreement, was not considering the existence of any accumulated earnings, under the rule of the *Sansome* case, or otherwise, but was agreeing to close the amount of the corporation's tax liability for 1938 and 1939 so that the corporation might take advantage of the deficiency dividends credit allowed personal holding companies. Thus, both Pennsylvania Corporation and respondent understood and intended that the closing agreement was only an agreement settling the corporation's tax liability for 1938 and 1939.

Petitioners seek to distinguish this case from the *Mitchell*, *Smith*, and *Alabama* cases on several grounds. The arguments have been considered, but we find all of them to be ineffective. The chief argument is that the original claim of Pennsylvania Corporation for a dividends paid credit in 1938 and 1939 was disallowed upon respondent's conclusion that capital and not dividends had been distrib-

---

[²] In *W. C. Mitchell Co.* the parties in 1929 entered into a closing agreement relating to the tax liability of the taxpayer for the fiscal year ended June 30, 1927. The taxpayer had reported no taxable income for 1927, the Commissioner had determined a deficiency of approximately $1,500, and in the closing agreement the parties agreed that the tax liability was approximately $93, which was based on a net income of about $2,700. For the fiscal year 1928, however, the taxpayer contended that it had overlooked a bad debt deduction in 1927 which would have offset its 1927 income and would have given it a loss for 1927 which it could have carried over to 1928. We held that the taxpayer was not foreclosed by reason of the closing agreement from introducing proof of the alleged net loss sustained in 1927 and applicable to the taxpayer's tax liability for 1928.

In *Alabama Mineral Land Co.*, the parties entered into a closing agreement in 1929 fixing the taxpayer's tax liability for the year 1927. In the determination of the liability so settled for 1927 an operating net loss of some $16,000 sustained in 1927 was given consideration. In respondent's deficiency letter to the taxpayer for the year 1928, respondent held that no net loss had been sustained in 1927, so that the taxpayer was not entitled to a net loss carry-over. The taxpayer contended that the closing agreement for 1927 conclusively established that it had sustained the operating loss of $16,000 in 1927, and that such agreement could not be disregarded for purposes of the tax year 1928. We rejected this contention, holding that the closing agreement was binding only as to the actual amount of tax liability for 1927 and not as to the methods and elements which went into determining the amount of such liability in so far as they affected other years

uted to the shareholders; that such conclusion was based upon a holding that the corporation had no accumulated earnings or profits; and that this conclusion must be binding upon the respondent in subsequent years. The question of whether the corporation had inherited accumulated earnings from T. W. Phillips Gas & Oil Co. under the rule of the *Sansome* case was never a subject of determination or discussion in any communication between the parties in connection with the closing agreement. Had Pennsylvania Corporation wanted a determination made upon this matter, it could have requested it and specifically agreed with the respondent on such matter. It did not do so. Both of the parties may have overlooked the factor that earnings or profits might have been inherited from Phillips Gas & Oil Co. in the tax-free reorganization in 1928, under the *Sansome* case doctrine. If so, that does not now preclude respondent from taking such inherited earnings, if they exist, into consideration for the purpose of computing the respective tax liabilities of the corporation and of its stockholders for the year 1941. In the *Mitchell* case, the taxpayer overlooked the fact that it had a net loss when it had entered into a closing agreement, but that fact, as a factor, could be considered, nevertheless, in determining tax liability for a later year. Or, if the doctrine of the *Sansome* case as applied to the 1928 reorganization, was considered *sub silentio* when the closing agreement was made, nevertheless that factor was not a matter agreed upon in the closing agreement so as to be binding on future years. In the *Mitchell, Smith,* and *Alabama* cases, the computation of the amount of the tax liability agreed upon under closing agreements disregarded the existence or nonexistence of important factors, and that is equally true of the closing agreement involved in this case. The closing agreement which was executed in 1941 is entirely devoid of any language evidencing agreement upon any such specific factor as the carrying over of accumulated earnings from Phillips Gas & Oil Co., or any matter other than the amount of Pennsylvania Corporation's tax liability for 1938 and 1939.

Petitioners also advanced the argument that respondent is estopped from his present determination because of his earlier determination denying the dividends paid credit for 1938 and 1939 on the ground that the corporation did not have earnings. The only fact upon which petitioners rely for estoppel is the execution of the closing agreement. This argument is no more than an indirect attempt to take the issue outside the rule of the above cited cases. The record before us gives no basis for working an estoppel against the respondent.

On authority of the *Mitchell, Alabama,* and *Smith* cases, *supra,* respondent's contention with respect to the effect of the closing agreement is sustained. Our conclusion is that the closing agreement was not an agreement upon the fact of the existence or nonexistence of

earnings carried over from Phillips Gas & Oil Co. under the doctrine of the *Sansome* case. It follows that the closing agreement does not preclude an independent determination of the amount, if any, of any accumulated earnings which Pennsylvania may have acquired from Phillips Gas & Oil Co. for purposes of determining 1941 tax liability.

It remains for petitioners to undertake to offer evidence at further hearing upon the matter, and they may file motion for further hearing in these proceedings. Such motion should be filed within 30 days from the date of promulgation of this report. In the event motion for further hearing is filed and granted, entry of decisions will be withheld. In any event,

*Decisions will be entered under Rule 50.*

