RHODE ISLAND HOSPITAL TRUST COMPANY, Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 4896.

United States Court of Appeals, First Circuit.

March 10, 1955.

Thomas R. Wickersham, Providence, R. I., with whom Harold B. Tanner, Providence, R. I., was on brief, for petitioner.

David O. Walter, Sp. Asst. to Atty. Gen., with whom H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to Atty. Gen., were on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This is a petition filed by Rhode Island Hospital Trust Company, as executor of the estate of the decedent Thomas E. Steere, seeking review of a decision of the Tax Court, 22 T.C. 79, determining a deficiency in the estate tax of the said decedent. The Commissioner had assessed certain deficiencies against the estate, all of which deficiencies were settled by the parties at or before trial in the Tax Court. The sole issue now before us was first raised in the Commissioner's answer. The question presented is whether the decedent as settlor of a certain trust had at the date of his death reserved the right to alter or amend the trust so as to require inclusion of the corpus in his gross estate under the provisions of § 811(d) (1) of the Internal Revenue Code, 26 U.S.C.A.

By instrument dated May 13, 1925, decedent conveyed certain property and insurance policies to Rhode Island Hospital Trust Company in trust, the income from the property to be applied to payment of premiums on the insurance policies. Upon the settlor's death the property and proceeds of the insurance policies were to be paid to the estate of the settlor. The trust instrument defined the investment and management powers of the trustee and contained the following provision:

"Provided, however, that the deposits made herewith and all future deposits as hereinbefore authorized and the trusts hereby declared, are to be considered as made and declared to be, and are made and declared, subject to the condition that I may at any time or from time to time during my life revoke any or all of the trusts herein declared and repossess myself of any or all of said property or policies, or any thereof, or any part or parts or accumulations of said property as my own sole property freed of all trusts; or I may at any time or from time to time add to, annul, change or modify in any respect whatsoever any of the trusts or powers hereby created or conferred, or any of the dispositions of income or of principal of my said trust estate."

On September 23, 1937, the settlor modified the 1925 trust extensively. The 1937 instrument recited the above-quoted language as authority for the modification, as follows:

"Whereas, it is provided in said deed of trust that I may at any time or from time to time during my life revoke any or all of the trusts therein declared or at any time or from time to time add to, annul, change or modify in any respect whatsoever any of the trusts or powers thereby created or conferred, or any dispositions of income or principal of my said trust estate;

Now, Therefore, in exercise of the power therein retained by me, I do hereby change and modify the terms and provisions of said trust and the powers therein created and conferred, with regard to the property now held by my said trustee under the terms and provisions of said trust, whether principal or income or additions to or accumulations of the same, and notwithstanding any provisions to the contrary in said deed of trust contained, in the following manner * * *."

The modified trust was to continue after the settlor's death, providing a life estate for his wife if she survived, then equal gifts to his children or to grandchildren if the settlor's children failed to live until certain designated ages. In other detailed provisions the modifying instrument spelled out the power of the trustee to invade principal, spendthrift provisions, and broader powers of investment for the trustee. The instrument concluded:

"I hereby declare said deed of trust bearing date of May 13, 1925, as modified by this instrument, to be irrevocable.

"In all other respects I hereby ratify and confirm said deed of trust."

No further amendments were made at any time, and the settlor died on February 23, 1949.

Section 811(d) (1) provides as follows:

"§ 811.   Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States— * * *

"(d)   Revocable transfers

"(1)   Transfers after June 22, 1936.   To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death * * *."

The Tax Court determined that the powers reserved in the 1925 instrument to "at any time or from time to time add to, annul, change or modify in any respect whatsoever any of the trusts or powers hereby created or conferred, or any of the dispositions of income or principal of my said trust estate" are encompassed by the "alter" or "amend" of § 811(d) (1), and this petitioner concedes.   The Tax Court then held that the declaration of the 1937 instrument that the trust was to be "irrevocable" does not indicate that the settlor intended to release his power to alter or amend, and that this power was specifically carried forward by the provision, "In all other respects I hereby ratify and confirm said deed of trust."

Petitioner contends that the Tax Court erroneously construed the unambiguous language of the two instru-

ments, arguing that to treat the 1925 phrase "add to, annul, change or modify in any respect whatsoever" as continued in force by the 1937 instrument, would negate the express provision of the latter instrument that the trust "as modified" was to be "irrevocable", for several reasons:

(1) Because "to annul" is equivalent to "to revoke", the provision in the 1937 instrument that the trust, as modified, is to be irrevocable amounted to a release not only of the power to revoke but also of the power to annul. Therefore, it is argued that the settlor could hardly have intended to release his power to "annul" without at the same time releasing the power "to change or modify" contained in the same clause; hence the only reasonable interpretation is that none of such powers were reserved by the 1937 instrument. On the other hand, the Commissioner contends that since "revoke" is defined in terms of revesting the corpus in the settlor in the 1925 instrument, while "annul" is not so defined, "annul" must refer to some modification of the trust provisions which would not result in a revesting in the settlor. We are not impressed by this particular contention of the Commissioner, because it would be difficult then to imagine what power was described by "annul". On the whole, it seems more reasonable to treat "annul" as surplusage in the 1925 instrument, and to consider both the stated power to revoke and the redundant power to annul as extinguished by the later irrevocability provision, without affecting the power to "change or modify".

(2) Because, had the effect of the 1937 instrument been to continue in force the power to "change or modify in any respect whatsoever", this would have nullified the express irrevocability provision, since an unrestricted power to modify would authorize the settlor by amendment to make his estate the sole beneficiary and then permit him, in an action in equity, to terminate the trust. Petitioner cites as authority a series of cases

and § 331 of Am.Law Inst., Restatement of Trusts, Comment *h*, which in part states that, "If the power to modify is subject to no restrictions it includes a power to revoke the trust." The cases referred to, however, do not support this proposition since in none of them was there present any indication of an expressed intention that the trust should be irrevocable in favor of the settlor. In Porter v. Commissioner, 2 Cir., 1932, 60 F.2d 673, 674, at page 674, Judge Learned Hand had occasion to consider a similar argument. He reviewed several decisions of lower New York courts holding that, where a trust was irrevocable but reserved in the settlor power to change beneficiaries, the settlor could change to one friendly beneficiary and with his consent revoke the trust. Judge Hand stated:

"The Court of Appeals of [New York] has not, however, passed upon the point, and we are not entirely satisfied that the rights of existing beneficiaries can be circumvented by such a device. It may eventually be held that while the donee of the power is at liberty to revoke and reappoint at his pleasure, his choice must not violate the condition upon its exercise, either directly or indirectly. If so, the original interests are defeasible only when the settlor does not profit by the change, and equity will inquire whether this limitation has been observed, or whether the whole contrivance is in violation of the trust."

This seems the more sensible view, and it is consistent with the comment of the Restatement of Trusts quoted above, if the irrevocability provision be considered as in effect an implied restriction upon the power to modify. Moreover, we do not think that this tenuous hypothesis as to what a court of equity might permit affords much assistance in divining the settlor's intention. For this reason the Third Circuit rejected a similar argument in In re Tyler's Estate, 1940, 109 F.2d 421, stating at page 422:

"We think that the petitioners can draw small aid from [the language of § 331 of the Restatement of Trusts] for it is obvious that while a power to modify a trust may include a power to revoke it, the power to revoke a trust need not include necessarily the power to alter it."

(3) Because, had it been desired to retain a power to alter or amend, especially after having provided for irrevocability, the draftsman would naturally have spelled out such a reservation with great particularity. But this is a fruitless speculation; it can be argued with equal force that a careful draftsman would have expressly surrendered the power to change or modify had this been the settlor's intention.

Both parties contend that the trust instruments are free of any ambiguity and necessitate the opposing constructions which they respectively urge. As suggested previously, a careful draftsman would have specifically provided for either retention or surrender of the amendatory power. But the instruments do present a sufficiently definite expression to afford a basis for decision. The 1925 instrument rather clearly distinguished power of alteration from power of revocation. This distinction is carried over in the 1937 instrument, where the amendatory power is referred to as authority for the modification. When the settlor provided that the trust as modified was to be irrevocable, this does not necessarily indicate any more than that he intended to bar the possibility of repossessing himself of the corpus. Nor is there anything in the total donative scheme to suggest that the settlor did not desire to continue in effect his amendatory power. Therefore, we are in agreement with the opinion of the Tax Court.

Petitioner alternatively argues that, if this court should consider the trust instruments ambiguous as to the crucial question, that ambiguity should be resolved in petitioner's favor on the basis of actions of the settlor subsequent to his making the 1937 instrument. Whether we should consider this extrinsic evidence may be a question, since we have determined that the instruments on their face are sufficiently clear to furnish a basis for decision. However, we have looked at it, and find it quite inconclusive and unpersuasive. Briefly, petitioner showed that the settlor filed a gift tax return in 1938 treating the 1937 instrument as a completed gift. By affirmative answer to a form question in that return, petitioner indicated he had made a gift "By the creation of an irrevocable trust for the benefit of another". Subsequently petitioner paid a deficiency assessed by the Commissioner on this transaction and paid further taxes and deficiencies upon two later gifts to the trust.

Petitioner argues that the settlor must have paid these gift taxes upon the advice of counsel that a completed gift had been made within the rule of Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20, which held that a gift in trust was not complete for gift tax purposes merely because the trust was declared to be irrevocable; but that such gift became complete upon subsequent renunciation of a reserved power to modify so as to designate new beneficiaries. The Commissioner points out in the present case that the initial gift tax return was made at a time when the state of the law was unclear, since the Sanford decision had not then been rendered and since it had been the Commissioner's policy (as reflected by the question asked on the face of the form as to whether an irrevocable trust had been created) to assess a gift tax when a trust was made irrevocable regardless of a reserved power to modify. The Commissioner suggests that the later payments of taxes and deficiencies involved such small sums that they were inconclusive even in light of the Sanford decision. As the Tax Court observed, there will be no inequity in the assessment of an estate tax on the trust notwithstanding these earlier payments of gift tax, since the parties have stipu-

lated that any gift taxes paid by the settlor will be allowed as credits to the estate tax.

The Commissioner is certainly right in stating that at the time of the execution of the 1937 instrument, the state of the law relating to the taxability of the trust as modified was far from clear. The Supreme Court, in Burnet v. Guggenheim, 1933, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748, had held that, under the Revenue Act of 1924, a transfer in trust was taxable when the settlor surrendered a power of revocation. In the same year the Supreme Court, in Porter v. Commissioner, 1933, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880, held that a transfer in trust subject to a power to modify or alter in the interest of anyone except the settlor was an incomplete transfer as far as the estate tax was concerned. Since the Court in the Guggenheim case plainly stated that the gift and estate tax statutes were *in pari materia,* one would suppose that the logical conclusion of the Porter case would have been acceptance of the incompleteness for gift tax purposes of a trust with the power to alter reserved. However, the Commissioner seems to have adopted an ambiguous and fluctuating policy with regard to such a transfer under the 1924 Act and, in the amended regulation of 1936 under the 1932 Act, Art. III, Reg. 79, declared that such a gift was completed for gift tax purposes. The confused state of administrative practice is detailed in Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, at pages 49–52, 60 S.Ct. 51, 84 L.Ed. 20. Two months prior to the execution of the 1937 instrument herein involved, in Hesslein v. Hoey, 2 Cir., 1937, 91 F.2d 954, certiorari denied, 1937, 302 U.S. 756, 58 S.Ct. 284, 82 L. Ed. 585, a divided court held that such a transfer was not complete for gift tax purposes. And in Estate of Sanford v. Commissioner, supra, and the companion case of Rasquin v. Humphreys, 1939, 308 U.S. 54, 60 S.Ct. 60, 84 L.Ed. 77, the Supreme Court adopted this view. Without further elaboration, it is certainly not a clear inference that the settlor's payment of the gift tax in 1938 must have been motivated by his understanding that the power to change or modify had been surrendered. It would be as reasonable to infer either a misapprehension of the state of the law or a desire to play it both ways—that is, to retain the power to modify should later domestic developments make this desirable, while laying the foundation for avoiding the payment of a future estate tax by treating the instruments as a completed gift for gift tax purposes. Nor does it seem that the payment of subsequent gift taxes and deficiencies would necessitate a choice between these alternative inferences except to the extent that sound legal advice would have explained the implications of the Sanford rule. Since the later taxes and deficiencies were small, it may well be that such advice was not sought by the settlor.

Moreover, petitioner has perhaps proved too much by introducing evidence of taxes and deficiencies paid upon the gifts to the trusts in later years. In the 1925 instrument, the settlor reserved the power to "add to" the corpus of the trust. Even if this was an unnecessary reservation, it may well be that the settlor did not consider it so and might have been availing himself of this power in making the subsequent gifts to the trust. This is not to say that the reservation of such a power would have made the earlier gifts incomplete for the purpose of taxability under the Sanford doctrine, but rather that the settlor after 1937 in fact utilized one of the powers reserved in the same clause of the 1925 instrument that contained the critical power to change or modify.

The decision of the Tax Court is affirmed.