EDWARD B. and JODY G. BENNETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bennett v. Commissioner
Docket No. 26408-86
United States Tax Court
T.C. Memo 1988-557; 1988 Tax Ct. Memo LEXIS 586; 56 T.C.M. (CCH) 796; T.C.M. (RIA) 88557; December 8, 1988
Mark E. Kellogg, for the petitioners. Maureen T. O'Brien, for the respondent. TANNENWALD
MEMORANDUM OPINION SWIFT, Judge: This matter is before the Court on respondent's motion for partial summary judgment. In a notice of deficiency dated April 9, 1986, respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: [1] Additions to Tax, Secs. Year
Deficiency
6651(a)(1)
6653(a)
1978
$ 9,100.96
$ -0-   $ 455.05
1979
7,384.19
374.10
675.97
1980
4,442.36
456.09
847.67
*587 Respondent's motion for partial summary judgment raises the issue of whether petitioners, as a matter of law, should be held to the terms of closing agreements they entered into with respondent. In opposing respondent's motion, petitioners argue that one of their contentions in the underlying lawsuit (namely, that they were fraudulently induced to enter into the closing agreements and that they therefore should be relieved of the terms of the agreements) raises a material factual question not appropriate for disposition by summary judgment. Petitioners Edward B. and Jody G. Bennett are husband and wife, and resided in Vienna, Virginia, when they timely filed a petition in this case. During 1972, and 1974 through 1980, petitioners were partners in two real estate investment partnerships -- Providence Place Associates (Providence Place) and Challenge of Greatness. For the years 1974 through 1977, petitioners claimed deductions for their share of partnership *588 losses arising from their interests in Providence Place and Challenge of Greatness. Petitioners also claimed their share of an investment tax credit claimed by Challenge of Greatness for 1975. Respondent disallowed the loss deductions and investment tax credit petitioners claimed for the years 1974 through 1977. At the Internal Revenue Service administrative level, petitioners contested respondent's disallowance of the deductions and the investment tax credit. After negotiations, however, on December 28, 1985, petitioners and respondent entered into Form 906 closing agreements under section 7121 and settled the adjustments for the years 1974 through 1977. In the Form 906 closing agreements, petitioners agreed that they had an adjusted basis of zero in their partnership interests in both Providence Place and Challenge of Greatness as of December 31, 1977. The Form 906 closing agreements did not make any reference to interest due, additions to tax, or penalties. Respondent determined deficiencies against petitioners for 1974 through 1977, but apparently he did not determine additions to tax for those years. On April 9, 1986, respondent issued a notice of deficiency to petitioners *589 with respect to petitioners' 1978 through 1980 tax liabilities. The notice of deficiency disallowed the loss deductions claimed for those years with respect to petitioners' investments in Providence Place and Challenge of Greatness and also determined additions to tax. On July 7, 1986, petitioners filed the petition in this case contesting respondent's disallowance of the partnership losses and respondent's determination of additions to tax for 1978 through 1980. Respondent contends in his motion for partial summary judgment that the closing agreements he and petitioners entered into with regard to the partnership losses establish that petitioners had zero tax bases in their investments in the partnerships for the years 1978 through 1980. Petitioners acknowledge that the Form 906 closing agreements they entered into with respect to these partnerships and in the context of their 1974 through 1977 tax returns normally would be conclusive as to their lack of bases in the partnership investments in later years, absent additional cash contributions or partnership debt obligations in the later years that would add to their bases. Petitioners argue, however, that (for purposes of this *590 case and only with respect to the partnership adjustments made for 1978 through 1980) they should be relieved of the terms of the closing agreements and that they should be entitled to establish that they had tax bases in the partnerships during 1974 through 1977 that carried over and that would support loss deductions claimed with respect thereto in 1978 through 1980. The ground for petitioners' requested relief from the closing agreements is the allegation that, at the time the closing agreements were entered into, respondent's representatives orally agreed not to assess additions to tax against petitioners for 1974 through 1977, or subsequent years, with respect to the Providence Place and Challenge of Greatness partnership losses claimed on petitioners' tax returns. Because respondent in this case (involving 1978 through 1980), has determined additions to tax relating to the partnership losses, petitioners allege that the terms of the oral agreements which resulted in the signing of the Form 906 closing agreements have been violated. Under section 7121(a), the Commissioner is authorized *591 to enter into written closing agreements with taxpayers concerning their Federal income tax liabilities. Parties to validly executed section 7121(a) closing agreements are bound only by the express terms contained in the documents reflecting the agreements. Phillips v. Commissioner,8 T.C. 1286, 1294 (1947), affd. 178 F.2d 270 (3d Cir. 1949); Smith v. United States,850 F.2d 242 (5th Cir. 1988). In enacting section 7121, Congress prescribed the exclusive method by which closing agreements may be executed, and Congress implied that efforts to bind the Commissioner in other ways are not effective. Cf. Botany Worsted Mills v. United States,278 U.S. 282, 288-289 (1929). [2] The terms of closing agreements executed in accordance with section 7121(a) are deemed final and conclusive, and the agreements will be set aside only where obtained through fraud or misrepresentation of a material fact. Sec. 7121(b).[3]
*592 Generally, Forms 866 and Forms 906 are used to reflect closing agreements executed under section 7121(a). Form 866 is used when a taxpayer's total tax liability for a year is closed. Form 906 is used where the Commissioner and a taxpayer reach agreement as to the treatment of specific items affecting the taxpayer's tax liabilities with regard to past and/or future years. Phillips v. Commissioner,8 T.C. 1286, 1294 (1947). An objective of Form 906 closing agreements is to insure consistent treatment of specific items affecting tax liabilities in a number of years. 13 Mertens, Law of Federal Income Taxation, sec. 52.05, p. 16 (1987). Form 906 closing agreements that do not address liability for additions to tax and interest do not bar the Commissioner from determining additions to tax and interest with respect to taxpayers' Federal income taxes in later years. See Smith v. United States, supra. When negotiating closing agreements, taxpayers who wish to preclude the Commissioner from determining additions to tax relating to tax adjustments reflected *593 in the closing agreements must have express language to that effect incorporated into the agreements. See Botany Worsted Mills v. United States, supra;Sampson v. Commissioner,444 F.2d 530, 531 (6th Cir. 1971); County Gas Service, Inc. v. United States,405 F.2d 147 (1st Cir. 1969); Martin v. Commissioner,56 T.C. 1294, 1300 (1971). [4]
Oral agreements with one of the Commissioner's agents, concerning matters relating to the terms of closing agreements, have no legal standing because they are not a product of the exclusive means for obtaining binding closing agreements prescribed in section 7121(a). Botany Worsted Mills v. United States, supra at 288-289; Country Gas Service, Inc. v. United States, supra at 149-150. *594 Even though neither taxpayers nor respondent can be held to the terms of oral or other side agreements not reflected in written closing agreements, closing agreements may be set aside, and parties may be relieved of the written terms of closing agreements if it is established that the parties were induced to sign the agreements by fraud or misrepresentation of a material fact. Sec. 7121(b), supra, n. 3. In Basch v. Nauts, an unreported case ( N.D. Ohio 1934, 15 AFTR 1040, 4 USTC par. 1342), the district court stated that in determining whether closing agreements will be set aside the usual rules as to fraud and misrepresentation apply. In order to establish fraud for purposes of setting aside a closing agreement, a taxpayer or respondent must establish that the allegedly fraudulent representation: (1) Concerned material facts; (2) was knowingly false; (3) was made with the intention that it be relied on in good faith by the other party without knowledge of its falsity; and (4) proximately caused injury or damages to the innocent party. Boatmen's National Co. v. M. W. Elkins & Co.,63 F.2d 214, 216 (8th Cir. 1933); *595 see also Marshall v. Hubbard,117 U.S. 415, 417 (1886). In order to establish a misrepresentation of a material fact sufficient to set aside a closing agreement pursuant to section 7121(b), the evidence must show that the representation made by one party contained incorrect or incomplete information or computations regarding the express terms reflected in the proposed closing agreement and that such information was in good faith and detrimentally relied upon by the other party in entering into the closing agreement. Phoenix Insurance Co. v. Commissioner,29 B.T.A. 291 (1933). Summary judgment may be granted where "it is shown that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Espinoza v. Commissioner,78 T.C. 412, 416 (1982). In opposing a motion for summary judgment, the opposing party must go beyond the mere pleadings and refer the Court to specific facts contained in answers to interrogatories, depositions, admissions, or any other acceptable materials, together *596 with affidavits, if any, that establish the presence of a genuine issue of material fact such that judgment cannot be rendered as a matter of law. Celotex Corp. v. Catrett,477 U.S. 317, 324 (1986); Rule 121(d). The court is to afford the party opposing a motion for summary judgment the benefit of all reasonable doubt. Inferences to be drawn from the underlying facts contained in the record must be viewed in the light most favorable to the opposing party. Espinoza v. Commissioner, supra.
In ruling upon a motion for summary judgment, the court, in essence, asks whether there is need for a trial to resolve any genuine and controlling factual issues that can be properly answered only by a finder of fact. If there are controlling factual issues that may reasonably be resolved in favor of either party, summary judgment is not appropriate. Anderson v. Liberty Lobby, Inc.,477 U.S. 242, 250 (1986). In determining increases and additions to tax against petitioners in the notice of deficiency for the years 1978 through 1980, respondent did not violate the express terms of the December 28, 1985, closing agreements, and petitioners *597 do not suggest otherwise. What petitioners seek is to be relieved of the terms of the closing agreements on the grounds of the alleged fraud or misrepresentation of a material fact. Affidavits and exhibits submitted by petitioners attached to their opposition to respondent's motion for partial summary judgment support petitioners' allegation that they entered into the closing agreements in reliance upon the alleged oral agreements. Respondent has offered no evidence or affidavits to refute the occurrence or nature of the alleged oral agreements. Viewing the inferences to be drawn from the facts contained in the record in the light most favorable to the party opposing the motion for summary judgment, it is possible that at trial petitioners can establish that the alleged oral agreements were made with respondent's agents. It also is conceivable that petitioners can establish each element of fraud as listed above. Petitioners then would be entitled to have the closing agreements set aside. If the closing agreements are set aside in a subsequent trial, petitioners will have to provide new evidence to establish their tax bases in their partnership interests in 1978, 1979, and 1980. *598 Because a genuine issue of material fact exists as to whether there was an oral agreement that fraudulently induced petitioners to sign the closing agreements, respondent's motion for summary judgment will be denied. Rule 121(b). An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. In some cases the doctrine of equitable estoppel has been used to bind the Commissioner or his agents where they acted with apparent authority. See Schuster v. Commissioner,312 F.2d 311, 317-318 (9th Cir. 1962); Tonkonogy v. United States,417 F.Supp. 78 (S.D.N.Y. 1976); The Exchange and Savings Bank of Berlin v. United States,226 F.Supp. 56 (D.Md. 1964); Lynn and Gerson, "Quasi-Estoppel And Abuse of Discretion As Applied Against The United States In Federal Tax Controversies", 19 Tax L. Rev. 487 (1964). Cf. J. W. Carter Music Co. v. Bass,20 F.2d 390 (S.D. Tex. 1927). Equitable estoppel must be affirmatively pleaded. Estate of Thomas E. Steere v. Commissioner,22 T.C. 79, 82 (1954), affd. 219 F.2d 923 (1st Cir. 1955). Petitioners herein did not plead equitable estoppel, and we do not address that issue. * * *↩
3. Section 7121(b) provides in part as follows: (b) Finality. -- If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact -- ↩
4. Taxpayers are well-advised to make written settlement offers in connection with closing agreements so as to minimize misunderstandings concerning the language to be used in the closing agreements. Garbis and Frome, "Techniques For Achieving A Good Settlement Of Tax Court Cases," 26 J. Tax. 374, 376↩ (June 1967).