CAROLD CAMPBELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; BOBBY CATES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Campbell
Docket Nos. 934-91, 935-91
United States Tax Court
T.C. Memo 1992-620; 1992 Tax Ct. Memo LEXIS 653; 64 T.C.M. (CCH) 1117; October 22, 1992, Filed *653 Decisions will be entered under Rule 155. For Petitioners: Charles R. Smith, Jr. For Respondent: Donald R. Gilliland. SCOTT
SCOTT
MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in each petitioner's Federal income tax for the calendar year 1987 as follows: Petitioner
Deficiency
Carold Campbell
$ 14,568
Bobby Cates
20,160
These cases were consolidated for trial, briefing, and opinion on July 31, 1991. One of the issues raised by the pleadings has been conceded by respondent, leaving for decision whether each petitioner is entitled to use 5-year forward averaging in computing his 1987 Federal income tax with respect to a distribution he received in 1987 from Hall-Mark Electronics Corp. Restated Profit Sharing Plan & Trust. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner Carold Campbell resided in Athens, Alabama, at the time of the filing of his petition in his case. Petitioner Bobby Cates resided in Harvest, Alabama, at the time of the filing of his petition in his case. Each petitioner filed an individual Federal income tax return for the calendar year 1987. Both petitioners *654 are cash basis taxpayers and neither had reached age 50 by January 1, 1986. Petitioners were employees of Hall-Mark Electronics Corp. (Hall-Mark) and participants in the Hall-Mark Electronics Corp. Restated Profit Sharing Plan & Trust, an employee stock ownership plan (the Plan). In 1981, the trustees of the Plan sold stock the Plan owned in Hall-Mark back to Hall-Mark for $ 4 per share (1981 sale). In September 1982 petitioner Bobby Cates separated from service with Hall-Mark. Petitioner Carold Campbell separated from service with Hall-Mark in May 1984. During 1984 a class action lawsuit was commenced in the United States District Court for the Northern District of Alabama by petitioners and other participants of the Plan against the Plan, Hall-Mark, and others. The lawsuit alleged that the trustees of the Plan, all of whom were officers and stockholders of Hall-Mark, had breached their fiduciary duties imposed by the Employment Retirement Income Security Act of 1974 (ERISA), when the trustees sold the Hall-Mark stock held by the Plan back to Hall-Mark at substantially less than its fair market value. Later in 1984, the Secretary of Labor commenced his own action against the *655 Plan, Hall-Mark, and others for the ERISA violations. In early 1985 the two cases were consolidated for all purposes. After the consolidation, counsel for the Secretary of Labor and counsel for the private plaintiffs worked together closely until the Secretary of Labor withdrew his participation. Even after the withdrawal of the Secretary of Labor, counsel for the private plaintiffs kept his counsel informed of the progress of the ongoing settlement negotiations. In January 1986 a settlement agreement was reached in the lawsuit. According to the settlement agreement, the defendants in the suit would offer each participant in the Plan $ 35 per share of Hall-Mark stock that had been allocated to his or her account at the time of the 1981 sale and sold as part of the 1981 sale. Counsel for the Secretary of Labor did not take part in the negotiations that led to the settlement agreement. At the District Court hearing on approval of the settlement, the Secretary of Labor filed a memorandum in opposition to approval of the partial settlement agreement and a motion for leave to intervene as of right in the suit. In February 1986 the District Court denied the motion of the Secretary *656 of Labor to intervene and approved the settlement agreement. The Secretary of Labor appealed the District Court's decision denying the motion to intervene. On January 23, 1987, the Court of Appeals for the Eleventh Circuit affirmed the District Court's decision in Campbell v. Hall-Mark Electronics Corp., 808 F.2d 775 (11th Cir. 1987). Each petitioner received his share of the settlement agreement distributions on May 22, 1987 (1987 distribution). If the Secretary of Labor had not attempted to intervene, the defendants would have been required to pay the additional amount to petitioners in March 1986. On his 1987 income tax return each petitioner reported the 1987 distribution using Form 4972 to elect the 5-year forward averaging method for reporting lump-sum distributions, stating that this method was used in accordance with section 402(e). [1] Respondent in the notice of deficiency determined that the entire 1987 distribution was taxable to each petitioner in 1987, the year it was actually paid. *657 OPINION Section 402(a) as applicable to years beginning after December 31, 1986, provides with respect to taxability of distributions to a beneficiary of an exempt trust that except as provided therein the actual amount distributed to any distributee by an employee's trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him in the year in which distributed. [2]
*658 Section 402(e) as applicable to 1987 provides for the imposition of a separate tax on lump-sum distributions as defined therein. Basically, this tax is a tax computed by 5-year forward averaging. [3]Section 402(e)(4), which defines lump-sum distributions, provides that for the purpose of sections 402 and 403 the term "lump-sum distribution" means the distribution or payment within 1 taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient: (1) on account of the employee's death, (2) after the employee attains age 59-1/2, (3) on account of the employee's separation from the service, or (4) after the employee has become disabled. *659 Changes to section 402 were made by the Tax Reform Act of 1986 (1986 Act), Pub. L. 99-514, sections 1122, 1124, 100 Stat. 2085, 2466, 2475. Section 1124 of the 1986 Act, 100 Stat. 2475, provides for an election to treat certain lump-sum distributions received during 1987 as received during 1986. [4] This section permits an employee who separates from the service of his employer corporation during 1986 and receives a lump-sum distribution, within the meaning of section 402(e)(4)(A), after December 31, 1986, and before March 16, 1987, on account of such separation from service, to treat such lump-sum distribution as if it were received when such employee separated from service. *660 Section 1122 of the 1986 Act, 100 Stat. 2466, made a number of changes to the averaging provisions, including the introduction of 5-year forward averaging for years beginning after December 31, 1986, in lieu of the previously provided-for 10-year forward averaging. This section also repeals capital gains treatment of certain amounts of distributions from tax-exempt employee's trusts. Section 1122(h) of the 1986 Act, 100 Stat. 2470, deals with effective dates of the various changes. It provides in general that the provisions of the amendments shall apply to amounts distributed after December 31, 1986, in taxable years ending after such date. Section 1122(h)(3) of the 1986 Act, 100 Stat. 2470, provides that in the case of a lump-sum distribution to which the paragraph applies the existing capital gains provisions shall continue to apply and the requirement of subparagraph (B) of section 402(e)(4) that the distribution be received after attaining age 59-1/2 shall not apply. However, section 1122(h)(3)(C) of the 1986 Act, [5] 100 Stat. 2471, states that lump-sum distributions to which the paragraph applies are those received by an individual who has attained age 50 before January *661 1, 1986, and makes an election under the paragraph. Petitioners' initial argument is that each of them constructively received the distribution from the sale of the Hall-Mark stock under the settlement agreement approved by the District Court in 1986 and that the 1986 provisions of section 402 should be applicable to the distributions. Petitioners argue that in any event they constructively *662 received the distribution on January 23, 1987, after the affirmance of the District Court's decision by the Circuit Court of Appeals for the Eleventh Circuit in Campbell v. Hall-Mark Electronics Corp., 808 F.2d 775 (11th Cir. 1987), which was before the March 16, 1987, date provided for in section 1124 of the 1986 Act, 100 Stat. 2475. Initially we have difficulty with petitioners' argument since the basic provisions of section 402(a) prior to its amendment by the 1986 Act also provided for the taxation of lump-sum distributions from an employee's trust described in section 401(a) which is exempt from tax under section 501(a) in the same manner as the provision in the 1986 Act as applicable to years after December 31, 1986. [6] The various exceptions in the 1954 Code prior to its amendment differed from those in the 1986 Act, particularly section 402(e) of the 1954 Code, which permitted 10-year forward averaging with respect to lump-sum distributions rather than 5-year forward averaging as provided for in the 1986 Act. However, section 402(e)(4) of the 1954 Code with respect to definitions and special rules defining lump-sum distributions under sections *663 402 and 403 is basically the same as the provisions of section 402(e)(4) as applicable to 1987. Section 402(e)(4) applicable to 1987 defines lump-sum distributions to mean distributions made within 1 taxable year to the recipient: (1) On account of the employee's death, (2) after the employee attained 59-1/2 years, (3) on account of the employee's separation from the service, or (4) after the employee became disabled. [7] It is clear that neither petitioner had died or become disabled before the 1987 distribution. The parties have stipulated that neither petitioner had attained 50 years of age at the time of the distributions. If petitioners could show that the distributions were because of separation from the service of Hall-Mark, they would be entitled to use 5-year forward averaging under section 402(e)(4) as applicable to 1987. *664 To be helped by the provisions of section 402(e)(4) of the 1954 Code, prior to its amendment by the 1986 Act, petitioners would have to show that the 1987 distributions were distributed prior to January 1, 1987, and were on account of their separation from the service of Hall-Mark. If they could make such a showing it would appear that the provisions of section 402(e)(4) of the 1954 Code, providing for 10-year forward averaging, would be applicable to the distribution. However, there is no showing in this record that the lump-sum distributions received by petitioners in 1987, and assuming such distributions were distributed prior to January 1, 1987, were received on account of their separation from service. At the trial petitioners' counsel stated that the distributions of $ 4 a share were received by petitioners in 1981 and one of petitioners stated that he verified this statement. If this is a fact, clearly the 1981 distributions were not received by either petitioner because of separation from the service of Hall-Mark since neither of them separated from the service of Hall-Mark until after the year 1981. The amount which petitioners received in the 1987 distributions was *665 merely an increase in the amount received for the stock and therefore likewise would not have been received because of petitioners' separation from service with Hall-Mark. A reading of the statement in the opinion of the Court of Appeals in Campbell v. Hall-Mark Electronics Corp., 808 F.2d 775, 776 (11th Cir. 1987), that "The suits allege that the corporation and the individuals made illegal profits on the subsequent sale to another corporation of all Hall-Mark stock" suggests that the distributions in 1981 might have been made because of termination of the plan. However, the record in this case does not show the reason for the 1981 distributions. To be helped by the provisions of section 1124 of the 1986 Act, 100 Stat. 2745, petitioners would have to show that the 1987 distributions were distributed between January 1, 1987, and March 15, 1987, on account of a separation from service during 1986. Even though in our view petitioners have not shown that they would be entitled to the income averaging provisions they claim even if the distributions of May 22, 1987, had been distributed to them as of February 5, 1986, or January 23, 1987, we feel impelled *666 to discuss whether the provisions applicable to petitioners are those in effect for years beginning after December 31, 1986, or those in effect for years before January 1, 1987, since that is the basis on which the parties make their arguments. Petitioners contend that they constructively received the May 22, 1987, distributions on February 5, 1986, or alternatively on January 23, 1987, and therefore should be treated here as either having received them in 1986 and taxed pursuant to section 402(e) prior to its amendment by the 1986 Act or be treated as having received the distributions in early 1987 and thus taxed pursuant to section 1124 of the 1986 Act. Respondent contends that petitioners did not constructively receive the distributions in 1986 or early 1987 and further contends that section 402(a) provides for the taxation of "the amount actually distributed" during the taxable years as distinguished from dealing with any amounts constructively received. We agree with respondent that section 402 is properly interpreted as dealing with amounts actually distributed as distinguished from the amounts actually or constructively received. Thus, petitioners' entire argument is beside *667 the point. [8] In any event, in our view, it is clear that under the normal rules of constructive receipt, petitioners did not constructively receive the distributions until the decision of the Court of Appeals for the Eleventh Circuit became final which would be 90 days after January 23, 1987, which date is past the March 16, 1987, date referred to in section 1124 of the 1986 Act, 100 Stat. 2475. *668 Petitioners argue that after the approval of the settlement agreement by the District Court in 1986, they constructively received the $ 35 per share for their stock. Their argument is that the motion brought by the Secretary of Labor to intervene and set aside the approval order was merely a third-party attack on a suit between petitioners and the Plan. The facts here do not bear out petitioners' contention. Had the motion not been filed by the Secretary of Labor, the payments to petitioners by the defendants would have been made in March 1986. However, the motion of the Secretary of Labor was a motion going directly to the validity of the approval of the settlement by the District Court. Clearly, from the facts here present, until that motion was finally resolved, petitioners could not obtain the funds the defendants had agreed to pay for the stock. Had the Circuit Court reversed the District Court and permitted intervention by the Department of Labor, petitioners would have received no amount for their stock until such time as the resolution of the case with the Secretary of Labor as a party occurred. Clearly, the suit by the Secretary of Labor was a restriction on the payment *669 of the funds to petitioners and, in fact, caused them to be unable to obtain those funds until after it was concluded. For constructive receipt to exist a taxpayer must have an unrestricted right to receive the funds which he is held to have constructively received. Where any substantial restriction on the right to receive exists, there is no constructive receipt. As we stated in Stiles v. Commissioner, 69 T.C. 558, 567-568 (1978), where funds are not unqualifiedly subject to a taxpayer's demand they have not been constructively received by him. This unqualified right to demand the funds has historically been the determining factor in deciding whether there was constructive receipt of the funds. Parr v. Scofield, 185 F.2d 535 (5th Cir. 1950); Carpenter v. Commissioner, 34 T.C. 408 (1960). The facts in the instant case show that petitioners did not have an unqualified right to receive the funds until the final conclusion of the litigation involving the Secretary of Labor's motion. Actually they had no right to receive the funds until that litigation was concluded. Petitioners' argument *670 that the date of conclusion of the litigation was the date the opinion of the Circuit Court was entered is without merit. Where litigation is involved, there is no constructive receipt until the opinion of the last court involved with the litigation becomes final. Farrell v. Commissioner, 45 B.T.A. 162 (1941), affd. 134 F.2d 193 (5th Cir. 1943). In the case of the litigation involving the Secretary of Labor in this case, that was not until 90 days after the decision of the Circuit Court was entered, which date is April 23, 1987. The cases relied upon by petitioners in support of their constructive receipt argument are factually distinguishable from this case. Most of them deal with questions of accrual of income and not of constructive receipt. No useful purpose would be served by a discussion of these cases. On brief, petitioners claim that respondent should be estopped from contending that they did not constructively receive their lump-sum distribution in 1986. Estoppel is an affirmative issue that must be raised in the pleadings and proved by the party claiming that the other party is estopped. Fortugno v. Commissioner, 41 T.C. 316, 323 (1963), *671 affd. 353 F.2d 429 (3d Cir. 1965); Lodi Iron Works, Inc. v. Commissioner, 29 T.C. 696, 701-702 (1958); Estate of Steere v. Commissioner, 22 T.C. 79, 82 (1954), affd. sub nom. Rhode Island Hosp. Tr. Co. v. Commissioner, 219 F.2d 923 (1st Cir. 1955). Since neither petitioner included an allegation of estoppel in any of his pleadings, there is no issue of estoppel in this case. If the statement in petitioners' trial memorandum and the statement of petitioners' counsel at trial, that one branch of the United States Government should not be entitled to apply a newly passed law to a taxpayer when another branch of the United States Government caused the receipt of an item to be in a year to which the new law applied by inappropriate action, could be considered as placing estoppel in issue, petitioners have failed to show estoppel. Petitioners have failed to show any conduct of any branch of the United States Government amounting to misrepresentation or concealment of a material fact. The record shows that petitioners were well aware of the actions of the Secretary *672 of Labor and certainly shows no misconduct of the Secretary of Labor in bringing the action. Finally petitioners have shown no reliance on any form of misrepresentation. Clearly there is no estoppel of respondent in this case. See Saigh v. Commissioner, 36 T.C. 395, 423 (1961). Finally, petitioners contend that, in denying 5-year forward averaging of the 1987 distribution to petitioners, respondent violated their constitutional rights to equal protection and due process of law. The basis of petitioners' equal protection and due process argument is their claim that the Commissioner did not assess a deficiency against the other participants in the Plan who received distributions in 1987 and used 5-year forward averaging. Petitioners argue that respondent is not entitled to treat them any differently from the treatment accorded to other participants in the Plan. First, we note that no evidence has been presented to show that other participants in the Plan elected 5-year forward averaging, and if they did, what facts were present with respect to their claims. Secondly, it has long been the position of this Court that our responsibility is to apply *673 the law to the facts of the case before us and determine the correct tax liability of the parties before us. Generally, how the Commissioner has treated other taxpayers has been considered irrelevant in making that determination. Penn-Field Industries, Inc. v. Commissioner, 74 T.C. 720, 722 (1980); Malinowski v. Commissioner, 71 T.C. 1120, 1128 (1979); Davis v. Commissioner, 65 T.C. 1014, 1022 (1976). Petitioners make some argument that respondent discriminated against them by selecting their returns for audit. Petitioners must establish not only that there was discrimination in selecting their returns for audit, which they have failed to do, but must also show that the Commissioner's discriminatory selection of them for audit was based upon impermissible considerations such as race, religion, or other factors which might violate their constitutional rights. Penn-Field Industries, Inc. v. Commissioner, supra at 723. Petitioners have made no showing of discrimination in this case. We therefore sustain respondent's determination in these cases with respect *674 to petitioners' claims to income averaging of the 1987 distributions. Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Sec. 402(a) provides: (a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST. -- (1) GENERAL RULE. -- Except as provided in paragraphs (2) and (4), the amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed, under section 72 (relating to annuities). The amount actually distributed to any distributee shall not include net unrealized appreciation in securities of the employer corporation attributable to the amount contributed by the employee (other than deductible employee contributions within the meaning of section 72(o)(5)). Such net unrealized appreciation and the resulting adjustments to basis of such securities shall be determined in accordance with regulations prescribed by the Secretary.↩
3. Sec. 402(e): (e) TAX ON LUMP SUM DISTRIBUTIONS. -- (1) IMPOSITION OF SEPARATE TAX ON LUMP SUM DISTRIBUTIONS. -- (A) SEPARATE TAX. -- There is hereby imposed a tax (in the amount determined under subparagraph (B)) on the ordinary income portion of a lump sum distribution. (B) AMOUNT OF TAX. -- The amount of tax imposed by subparagraph (A) for any taxable year is an amount equal to 5 times the tax which would be imposed by subsection (c) of section 1 if the recipient were an individual referred to in such subsection and the taxable income were an amount equal to 1/5 of the excess of -- (i) the total taxable amount of the lump sum distribution for the taxable year, over (ii) the minimum distribution allowance. (C) MINIMUM DISTRIBUTION ALLOWANCE. -- For purposes of this paragraph, the minimum distribution allowance for the taxable year is an amount equal to -- (i) the lesser of $ 10,000 or one-half of the total taxable amount of the lump sum distribution for the taxable year, reduced (but not below zero) by (ii) 20 percent of the amount (if any) by which such total taxable amount exceeds $ 20,000. (D) LIABILITY FOR TAX. -- The recipient shall be liable for the tax imposed by this paragraph. * * * (3) ALLOWANCE OF DEDUCTION. -- [The] total taxable amount of a lump sum distribution for the taxable year shall be allowed as a deduction from gross income for such taxable year, but only to the extent included in the taxpayer's gross income for such taxable year. (4) DEFINITIONS AND SPECIAL RULES. -- (A) LUMP SUM DISTRIBUTION. -- For purposes of this section and section 403, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient -- (i) on account of the employee's death, (ii) after the employee attains age 59-1/2, (iii) on account of the employee's separation from the service, or (iv) after the employee has become disabled (within the meaning of section 72(m)(7))↩
4. Sec. 1124(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2475 provides: SEC. 1124. ELECTION TO TREAT CERTAIN LUMP SUM DISTRIBUTIONS RECEIVED DURING 1987 AS RECEIVED DURING 1986. (a) IN GENERAL. -- If an employee separates from service during 1986 and receives a lump sum distribution (within the meaning of section 402(e)(4)(A)↩ of such Code) after December 31, 1986, and before March 16, 1987, on account of such separation from service, then, for purposes of the Internal Revenue Code of 1986, such employee may elect to treat such lump sum distribution as if it were received when such employee separated from service.
5. Sec. 1122(h)(3)(C) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2471 provides: (C) LUMP SUM DISTRIBUTIONS TO WHICH PARAGRAPH APPLIES. -- This paragraph shall apply to any lump sum distribution if -- (i) such lump sum distribution is received by an individual who has attained age 50 before January 1, 1986, and (ii) the taxpayer makes an election under this paragraph. Not more than 1 election may be made under this paragraph with respect to an employee. An election under this subparagraph shall be treated as an election under section 402(e)(4)(B)↩ of such Code with respect to any other lump sum distribution.
6. Sec. 402(a) of the 1954 Code provided as follows: (a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST. -- (1) GENERAL RULE. -- Except as provided in paragraphs (2) and (4), the amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed, under section 72 (relating to annuities). The amount actually distributed to any distributee shall not include net unrealized appreciation in securities of the employer corporation attributable to the amount contributed by the employee (other than deductible employee contributions within the meaning of section 72(o)(5)). Such net unrealized appreciation and the resulting adjustments to basis of such securities shall be determined in accordance with regulations prescribed by the Secretary. ↩
7. Sec. 402(e)(4) provides: (4) DEFINITIONS AND SPECIAL RULES. -- (A) LUMP SUM DISTRIBUTION. -- For purposes of this section and section 403, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient -- (i) on account of the employee's death, (ii) after the employee attains age 59-1/2, (iii) on account of the employee's separation from the service, or (iv) after the employee has become disabled (within the meaning of section 72(m)(7))↩
8. In a recent Memorandum Opinion, Hegarty v. Commissioner, T.C. Memo. 1992-143, we held that in order to qualify for any of the special rules provided for in the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, a taxpayer must show actual receipt during the requisite period rather than constructive receipt. In that case we noted that prior to 1982 sec. 402(a)(1) included in income the amounts "actually distributed or made available". Sec. 314(c) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 286, amended sec. 402(a)(1) by striking out the words "or made available". We therefore concluded in Hegarty v. Commissioner, supra, that sec. 402↩ in its entirety applied only to amounts actually distributed and the doctrine of constructive receipt did not apply.