ROBERT S. LAMSON AND JEAN M. LAMSON, ALFRED J. MARTIN, JR. AND AMILU S. ROTHHAMMER, FORMERLY AMILU S. MARTIN, AND RICHARD R. AND CAROLE PERKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lamson v. Commissioner
Docket No. 3558-85
United States Tax Court
T.C. Memo 1994-383; 1994 Tax Ct. Memo LEXIS 392; 68 T.C.M. (CCH) 383; 94-2 U.S. Tax Cas. (CCH) P47,945; August 16, 1994, Filed *392 For Robert S. Lamson and Jean M. Lamson, [1] petitioners: Declan J. O'Donnell and John Thomas Maloney, Jr. For respondent: Robert A. Varra and Sara J. Barkley. DAWSON
DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Robert N. Armen, Jr. pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and Rules 180, 181, and 183. [2] The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE ARMEN, Special Trial Judge: This case is before the Court on the Motion to Revise Decision, filed March 29, 1994, *393 by petitioner Robert S. Lamson, and the Motion to Revise Decision, filed May 6, 1994, by petitioner Jean M. Lamson. Because the two motions are virtually identical, we will refer to them collectively as the motion to revise decision, or simply the motion; and, for the sake of convenience, we will refer to petitioner Robert S. Lamson and petitioner Jean M. Lamson collectively as petitioners. On February 23, 1994, the Court entered its Decision in this case pursuant to the agreement of the parties. The parties expressed their agreement in a stipulation executed by Declan J. O'Donnell (Mr. O'Donnell), petitioners' counsel of record, and by Robert A. Varra and Sara J. Barkley, respondent's counsel. At the time Mr. O'Donnell executed the stipulation, he was petitioners' sole counsel of record; at present he is cocounsel along with John Thomas Maloney, Jr. (Mr. Maloney). As relevant herein, the foregoing Decision provides that there is due from petitioners for the taxable year 1978 (1) a deficiency in income tax in the amount of $ 12,141 and (2) an addition to tax for late filing under section 6651(a)(1) in the amount of $ 3,035. Petitioners' motion, filed by petitioners' current *394 cocounsel of record Mr. Maloney and not by Mr. O'Donnell, seeks to revise the Court's Decision by eliminating therefrom the addition to tax for late filing. Background[3]
During the taxable year 1978 petitioners were married. Their Federal income tax return for that year was due to be filed on or before October 15, 1979. However, they did not file their return until July 20, 1982. In the notice of deficiency, respondent determined a deficiency in tax for 1978 and an addition to tax for late filing under section 6651(a)(1). [4] The deficiency in tax reflected respondent's determination that petitioners were not entitled to the deduction for a partnership loss as claimed on their 1978 tax return. The addition to tax reflected respondent's determination that petitioners *395 had filed their return almost 3 years late. In the petition, filed by Mr. O'Donnell on February 15, 1985, petitioners expressly disputed the entire deficiency in tax; however, petitioners did not expressly assign any error to respondent's determination of the late filing addition nor did petitioners expressly allege any facts in support of an allegation that they are not liable for the addition to tax. Petitioners' partnership loss related to their involvement in a partnership known as the Twin Rocks Company. Respondent had classified this partnership as part of a national litigation project known as Kilpatrick Coal. On November 16, 1990, respondent's district counsel in Denver wrote a letter to Mr. O'Donnell regarding the Kilpatrick Coal project. This letter provided in relevant part as follows: This letter is to advise you of the current status of the cases involving the Kilpatrick *396 Coal Tax Shelter. The Kilpatrick Coal Shelter has been reassigned to Robert A. Varra and Sara J. Barkley. Any further correspondence should be directed to them. The current settlement offer allows investors a deduction equal to 100 percent of their cash out of pocket in the year paid and the government will concede all additions to the tax relating to the coal tax shelter, including the imposition of interest at the increased rate provided by I.R.C. § 6621(c) * * *. * * *
If the settlement offer is accepted, each investor will have to adequately substantiate the amount of cash out of pocket. * * * After the offer has been accepted and substantiation provided, settlement documents will be prepared by the government. * * * If you have any questions regarding this matter please contact Robert A. Varra or Sara J. Barkley of this office. * * *
[Emphasis added.] By letter dated February 12, 1991, Mr. O'Donnell accepted respondent's settlement offer on behalf of petitioners. Mr. O'Donnell's acceptance letter also stated that "A usual Form 906 [Closing Agreement] will be prepared by the I.R.S. Appeals Officer and sent directly to the client with a copy to us." A few months *397 later, on June 19, 1991, respondent sent separate (but virtually identical) closing agreements (for convenience, the closing agreement) to petitioner Robert S. Lamson and petitioner Jean M. Lamson. [5] The closing agreement, prepared by an appeals officer in Denver (the appeals officer) on IRS Form 906C ("Closing Agreement on Final Determination Covering Specific Matters"), allowed petitioners a partnership loss deduction for 1978 in the amount of $ 10,000, the amount of their cash contribution to the Twin Rocks Company. The closing agreement was silent concerning the applicability, or the nonapplicability, of the addition to tax for late filing. Petitioner Robert S. Lamson executed the closing agreement on June 30, 1991, and also purported to execute it on July 5, 1991, on behalf of petitioner Jean M. Lamson. Petitioner Jean M. Lamson executed the closing agreement on February 25, 1992. On July 8, 1991, the appeals officer recommended *398 approval of the closing agreement sent to petitioner Robert S. Lamson, and on March 5, 1992, recommended approval of the closing agreement sent to petitioner Jean M. Lamson. However, it was not for another 2 years, until March 14, 1994, that the closing agreement was actually executed on behalf of respondent. On June 19, 1991, when respondent sent petitioners the foregoing closing agreement, respondent also sent petitioners a computation of the tax which would be due. The computation, prepared by the appeals officer, reflected that petitioners were liable for a deficiency in tax in the amount of $ 12,141 but were not liable for any addition to tax for late filing under section 6651(a)(1). The appeals officer thought that petitioners were not liable for the addition to tax for late filing because she understood district counsel's offer to concede "all additions to the tax relating to the coal tax shelter" to be an unqualified concession of all additions to tax. In December 1991, the appeals officer sent petitioner Jean M. Lamson, who was then divorced from petitioner Robert S. Lamson, a revised closing agreement for her signature. The revised closing agreement corrected petitioner *399 Jean M. Lamson's name, but was otherwise identical to the Form 906C sent to her on June 19, 1991. [6] The appeals officer also enclosed another computation of the tax which would be due. This computation was identical to the computation previously sent to petitioners on June 19, 1991. As before, the computation showed that petitioners were liable for a deficiency in tax in the amount of $ 12,141 but were not liable for any addition to tax for late filing under section 6651(a)(1). In early January 1992, the appeals officer concluded that she had misunderstood district counsel's settlement offer and that the addition to tax for late filing under section 6651(a)(1) was not an addition to tax "relating to the coal tax shelter". Accordingly, the appeals officer prepared a revised computation showing that petitioners were liable for a deficiency in tax in the amount of $ 12,141 and an addition to tax for late filing in *400 the amount of $ 3,035. The revised computation was sent to petitioners in late January 1992. A handwritten cover letter stated as follows: I am enclosing a revised audit statement since the one I forwarded to you on 6-19-91 had an error. The delinquency penalty under IRC § 6651(a)(1) cannot be dropped. The settlement position was to only drop penalties that pertained to the shelter, such as negligence. See attached copy of 11-16-90 letter to Declan O'Donnell. I apologize for any inconvenience that this oversight may have caused. Call me * * * or write to me * * * if you have any questions.
The appeals officer did not ask petitioners to execute any revised closing agreement. Conversely, petitioners did not ask the appeals officer to prepare a revised closing agreement nor did they express any objection to the revised computation. Nearly 2 years later, on January 3, 1994, respondent's counsel sent Mr. O'Donnell a proposed stipulated decision for his execution on behalf of petitioners. This document provided that petitioners were liable for (1) a deficiency in tax in the amount of $ 12,141 and (2) an addition to tax for late filing under section 6651(a)(1) in the amount *401 of $ 3,035. Mr. O'Donnell executed the stipulated decision on February 9, 1994, and returned it to respondent's counsel, who signed it on February 10, 1994. It was then sent to the Court and was entered on February 23, 1994. Discussion
Because the parties entered into a closing agreement, we begin our analysis with section 7121. By virtue of section 7121(a), the Commissioner is authorized to enter into an agreement in writing with any person relating to such person's liability in respect of any internal revenue tax for any taxable period. A closing agreement is binding on the parties as to the matters agreed upon, and the agreement may not be annulled, modified, set aside, or disregarded in any suit, action, or proceeding, except upon a showing of fraud, malfeasance, or misrepresentation of a material fact. Sec. 7121(b). There are several types of closing agreements. For example, in a case in which the parties propose to conclusively close the total tax liability for a taxable period ending prior to the date of the agreement, Form 866 ("Agreement as to Final Determination of Tax Liability") is generally used. Zaentz v. Commissioner, 90 T.C. 753, 760-761 (1988); *402 sec. 601.202(b), Statement of Procedural Rules. On the other hand, in a case in which the parties propose to conclusively resolve only one or more matters affecting tax liability, Form 906 ("Closing Agreement as to Final Determination Covering Specific Matters") is generally used. Id. In the present case, the parties utilized Form 906 because their manifest intent was limited to determining with finality petitioners' partnership loss from the Twin Rocks Company. This Court has clearly held that a Form 906 closing agreement is binding only as to the matters agreed upon therein. Estate of Magarian v. Commissioner, 97 T.C. 1, 5-6 (1991); Zaentz v. Commissioner, supra at 761-762; Laughlin v. Commissioner, T.C. Memo. 1993-122. In the present case, the parties' closing agreement was silent concerning the applicability, or the nonapplicability, of the addition to tax for late filing. Such silence, however, does not mean that respondent should be deemed to have conceded the addition to tax. Rather, such silence means only that the parties chose not to resolve the addition to tax in *403 the context of their closing agreement. Estate of Magarian v. Commissioner, supra.
Petitioners' real contention is that it would be inequitable to hold petitioners liable for the late filing addition because of the computation prepared by the appeals officer in June 1991. The computation showed that while petitioners were liable for a deficiency in tax for 1978, they were not liable for the late filing addition. The computation was sent to petitioners and accompanied the closing agreement which they signed. Petitioners infer that the computation should be deemed to be included within the terms of the closing agreement. [7] We disagree. *404 The short and conclusive answer to petitioners' contention is that a closing agreement is to be read within its four corners; and, unless it is ambiguous as to essential terms, which the closing agreement in issue is not, it is to be read without the assistance of extrinsic evidence. See Geringer v. Commissioner, T.C. Memo. 1991-32. Moreover, as already noted, only those matters specifically set forth in a closing agreement are to be treated as final and conclusive. Estate of Magarian v. Commissioner, supra; Zaentz v. Commissioner, supra; Laughlin v. Commissioner, supra.
Apart from the short answer to petitioners' contention, we view the "equities" in this case differently than petitioners. Insofar as petitioner Jean M. Lamson is concerned, the record discloses that she executed the closing agreement on February 25, 1992, about a month after the appeals officer had prepared the revised computation and sent it to petitioners showing that they were liable for both a deficiency in tax and an addition to tax for late filing. Thus, at the time *405 petitioner Jean M. Lamson executed the closing agreement, she should have been under no misapprehension concerning the parameters of her total liability. Moreover, although the mistake made by the appeals officer in her June 1991 computation is regrettable, we are not convinced that it misled anyone. District counsel's settlement letter to Mr. O'Donnell dated November 16, 1990, stated that respondent would concede only those additions to tax "relating to the coal tax shelter". However, the late filing addition did not relate to "the coal tax shelter". Rather, it related to the fact that petitioners filed their 1978 return nearly 3 years late. Supporting our view that the June 1991 computation misled no one is the fact that petitioners did not ask the appeals officer to prepare a revised closing agreement after she sent them the revised computation showing their liability for the addition to tax for late filing. Indeed, petitioners did not express any objection to the revised computation and, in due course, they executed (through their counsel Mr. O'Donnell) the stipulated decision agreeing to the addition to tax. [8]
*406 Finally, petitioners' acceptance of liability for the late filing addition in the stipulated decision is completely consistent with their position in the petition filed in this case. In the petition, petitioners expressly disputed the entire deficiency in tax determined by respondent. In sharp contrast, however, petitioners did not expressly assign any error to respondent's determination of the late filing addition nor did petitioners expressly allege any facts in support of an allegation that they are not liable for the addition to tax. See Rule 34(b)(4) and (5); Jarvis v. Commissioner, 78 T.C. 646, 658 (1982) (any issue not raised in the pleadings is deemed to be conceded); Gordon v. Commissioner, 73 T.C. 736, 739 (1980) (same). Petitioners thereby effectively conceded the late filing addition, except to the extent that there was no deficiency in tax (or a deficiency less than the amount determined by respondent). To grant petitioners' motion to revise decision would result in an unwarranted windfall to petitioners. In view of the foregoing, petitioners' motion to revise decision will be denied. An appropriate *407 order will be issued. Footnotes
1. Mr. O'Donnell is also counsel for the other petitioners in this case; however, only petitioner Robert S. Lamson and petitioner Jean M. Lamson are involved in the matter addressed by this Opinion.↩
2. Unless otherwise indicated, section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Counsel for the parties declined the Court's offer of an evidentiary hearing in this case, preferring instead for the Court to find the facts necessary to a resolution of petitioners' motion from the parties' papers and the exhibits thereto.↩
4. As determined by respondent in the statutory notice, the deficiency in tax was $ 17,223 and the late-filing addition was $ 4,306.↩
5. Petitioners had separated and were living apart from one another at this time.↩
6. As previously stated, petitioner Jean M. Lamson executed the closing agreement on Feb. 25, 1992.↩
7. Petitioners do not contend that the closing agreement should be annulled, modified, set aside, or disregarded because of fraud, malfeasance, or misrepresentation of a material fact. See sec. 7121(b)(2)↩. Indeed, there is no suggestion in the record that petitioners are displeased with the resolution of the partnership loss issue in the closing agreement.
8. We note that Mr. O'Donnell, petitioners' original counsel and current cocounsel, has remained silent throughout the most recent phase of this case. Cf. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Recklitis v. Commissioner, 91 T.C. 874, 890↩ (1988).